# United States Court of Appeals
## For the First Circuit

No. 05-1202

UNITED STATES OF AMERICA,

Appellee,

v.

JOHAN TORRES-ROSARIO,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Salvador E. Casellas, U.S. District Judge]

Before

Boudin, Chief Judge,

Selya and Lynch, Circuit Judges.

Rafael F. Castro-Lang for appellant.
Nathan J. Schulte, Assistant United States Attorney, for appellee. H.S. García, United States Attorney, and Nelson Pérez-Sosa, Assistant United States Attorney, Senior Appellate Attorney, on brief for appellee.

May 8, 2006

**BOUDIN, <u>Chief Judge</u>**. Johan Torres-Rosario ("Torres") was indicted on August 28, 2003, for conspiracy to distribute controlled substances in an amount that carries a maximum term of life imprisonment. 21 U.S.C. §§ 841(a)(1), 846 (2000). He pled guilty under a plea agreement pointing to a minimum guideline sentence of 188 months, then sought unsuccessfully to withdraw his plea, and now appeals from his conviction and 188-month sentence.

The background events are as follows. Torres surrendered on March 29, 2004, and was held without bail. Beginning in May 2004, Torres' counsel and the Assistant United States Attorney ("AUSA") began discussing the possibility of a plea agreement; for a considerable period, an offer by the government of 11 years' imprisonment was on the table but was never accepted by Torres.

The critical events involve the period of September 2 through September 10, 2004, with Torres' trial scheduled to begin on Monday, September 13, 2004. Seemingly (the chronology is not perfectly clear), Torres and his trial counsel (he is represented on appeal by a different attorney) met with the AUSA on Thursday, September 2; on Thursday, September 9, there was another meeting of the AUSA and counsel; whether Torres was present is unclear (the government says yes and he says no).

During the September 2 meeting, according to Torres, the AUSA stated, "on my children, if you go to trial, I'm going to give you life, if you don't sign today, for each day that goes by, I'll

[sic] will give you two more years." Torres refused the 11-year offer but on Thursday September 9 the AUSA disclosed the names of four government witnesses to Torres' counsel. That night, Torres called his lawyer and asked him to make a deal.

On September 10, 2004--the Friday before the trial date-- Torres, who knew only that he had asked his lawyer to make a deal, was brought unexpectedly to the courthouse where his lawyer presented him with a plea agreement modeled on one that had been offered the preceding May; but the amount of drugs stipulated, together with firearms and leadership enhancements previously proposed, would lead to a minimum guideline sentence of 15 years and 8 months, which the government said it would recommend.

Torres now says that he was extremely reluctant to sign but his lawyer pressed him hard, saying: "sign, sign, sign." Torres says that in substance he spent only 15 minutes with his lawyer considering the proposed deal--including translation of the terms of the agreement and whatever discussion took place--before he accepted the terms proposed and was taken before a magistrate judge who (on consent) conducted the Rule 11 hearing and then recommended acceptance of the agreement.

According to Torres, on the same evening (September 10), he had second thoughts and sought to contact his lawyer in order to withdraw the plea. A formal motion for withdrawal of the plea was not filed until September 21, 2004, apparently because the district

court was closed for some of the intervening time due to a hurricane that hit Puerto Rico. In the motion, Torres' counsel justified his request on the ground that Torres had only 15 minutes in which to understand the plea agreement and agree to accept it; apparently by coincidence the district court accepted the magistrate judge's recommendation on the same day, perhaps without knowing of the motion.

On November 8, 2004, the district court denied Torres' motion to withdraw the plea. On November 17, 2004, Torres filed two pro se submissions with the district court, advising the court for the first time of the alleged threat by the AUSA and of his own counsel's advice to "sign, sign, sign." Torres also said that his own counsel had failed to describe the AUSA's conduct in the initial motion to withdraw the plea, even though Torres wanted him to do so.

Torres' counsel separately filed a motion for reconsideration of the denial, again arguing that 15 minutes was insufficient time for Torres to comprehend the plea. The district court denied both motions. Just prior to his sentencing hearing Torres submitted a third pro se motion requesting permission to withdraw his plea, repeating and elaborating on earlier claims, further criticizing his own counsel, and also stating that he had asked his counsel to withdraw from representing him.

At sentencing, the district court conducted an abbreviated hearing on the plea withdrawal question, allowing Torres to state his reasons for requesting withdrawal and inviting counsel for both Torres and the government to present arguments. After hearing these statements, the district court again denied the motion to withdraw the plea and sentenced Torres, consistent with the plea agreement, to 188 months in prison.

On this appeal, represented by new counsel, Torres presents two claims: first, that his original counsel did not properly represent him and, because of a conflict of interest, should have withdrawn from the case; and second, that the district court should have allowed Torres to withdraw his plea. The former claim requires a motion under 28 U.S.C. § 2255 (2000); the harder issue is whether Torres should be afforded a full-scale evidentiary hearing as to the plea withdrawal issue.

Torres' first claim rests upon the Sixth Amendment right to assistance of counsel, U.S. Const. amend. VI, but it is not the usual claim that Torres' original counsel bungled the defense--for example by ignoring a meritorious defense or urging Torres to agree to an unsound plea or misconducting the trial. Such a claim, usually hard to sustain, would require Torres to show that counsel's advice was manifestly incompetent and that the incompetence had probably altered the outcome. Strickland v. Washington, 466 U.S. 668, 687 (1984).

Instead, Torres says that during the plea withdrawal phase, trial counsel labored under an actual conflict of interest with his client. Such a showing, also resting upon Sixth Amendment case law, is sometimes called a "per se" violation of the Sixth Amendment. United States v. Soldevila-Lopez, 17 F.3d 480, 486 (1st Cir. 1994); see also Cuyler v. Sullivan, 446 U.S. 335, 349-50 (1980). What that phrase means is that Torres, if he showed such a conflict, arguably would be entitled to relief based on an assumption of prejudice or, more exactly, without the need to prove prejudice. Cuyler, 446 U.S. at 349-50.

That is the rub. Sixth Amendment attacks on counsel are rarely allowed on direct appeal because they require findings as to what happened and, as important, why counsel acted as he did-- information rarely developed in the existing record. So, the defendant is usually remitted to a petition under section 2255. Still, relief can be granted on appeal if the facts are undisputed, sometimes feasible where an actual conflict is claimed. Soldevila-Lopez, 17 F.3d at 486.

In this case no actual conflict of interest could be found "on the undisputed facts." True, Torres asserted in the district court and on this appeal that his counsel failed to protect him against abusive conduct by the AUSA and, instead, pressed him unduly to sign the agreement. This, it is suggested, gave his own trial counsel a conflicting interest to suppress or

ignore information that could have helped Torres win his motion to withdraw his plea.

Yet at this stage we have only Torres' word as to what occurred and no explanation from counsel as to either his version of these events or why he made the choices he did. Torres says that his counsel did not "protect" him from improper threats. But the pressure applied by the prosecutor--if we assume Torres' version of the threat is conceded by the government's silence–although perhaps distasteful would not show wrongdoing. See Bordenkircher v. Hayes, 434 U.S. 357, 358-64 (1978). Nor is it clear what counsel could have done to "protect" Torres.

The hard reality is that plea bargaining in criminal cases is not for the delicate minded. Most prosecutors, we think, would avoid, for multiple reasons (including the prospect of appeals like this one), so striking a calibration of the consequences of delay and so severe a threat (if this is what happened). Yet the government's costs rise as trial approaches and the best deal from the prosecutor is ordinarily available before the investment in final trial preparations.

Torres' claim of conflict does not depend on showing that the AUSA misbehaved. He says that his counsel failed to include mention of the AUSA's threat in counsel's motion or reconsideration request, even though Torres so requested and even though most lawyers would probably think it useful context to support the later

plea withdrawal motion. It would be enough to show that his own counsel had a significant interest in concealing information that would assist his client.

But there is no obvious reason why trial counsel would have any interest in concealing wrongdoing by the prosecutor, nor would he have much reason to conceal the fact--even if we assume Torres' version to be correct--that he strongly encouraged ("sign, sign, sign") his client to accept the agreement. Of course, counsel might exert undue pressure and wish to conceal that; but "sign, sign, sign" is not improper and might well have been very wise advice.

The only puzzle is why trial counsel's motion to withdraw did not mention the vivid threat by the prosecutor. But this may have been a tactical judgment or difference in perception. In all events, trial counsel's explanation is not available to us, which is why section 2255 is generally the proper avenue for competence claims--even ones far more promising than the conflict of interest claim in this case appears to be.

Torres notes that his trial counsel requested leave, and was allowed, to withdraw after the sentencing hearing on the ground that "the allegations made by Mr. Torres during the sentencing hearing [ ] created a conflict." But by this time Torres had begun to criticize his own counsel's performance with a vigor that could have made future representation uncomfortable, requests of counsel

to withdraw after sentencing are quite common, and counsel's statement at this stage does not show an actual conflict of interest during the plea or during the pre-sentence request to withdraw the plea.

We turn, then, to the question whether the district judge erred in refusing to allow the plea to be withdrawn. Where a defendant seeks to withdraw a plea after its acceptance but before sentencing, he must show a "fair and just" reason, Fed. R. Crim. P. 11(d)(2)(B), relevant factors being the force of the reasons given for the request, its timing, any assertion of actual innocence, indications that the plea was less than fully informed and voluntary, and possible prejudice to the government. United States v. Parrilla-Tirado, 22 F.3d 368, 371 (1st Cir. 1994).

Review of a denial of such a motion is for abuse of discretion. Parilla-Tirado, 22 F.3d at 371. Although older case law endorses a liberal approach to pre-sentence plea withdrawals, United States v. Ramos, 810 F.2d 308, 311 (1st Cir. 1987), it is questionable how far this view has survived the pressure of growing dockets and an increasing appreciation of the grim dynamics of plea bargaining, including the prevalence of "buyer's remorse" among those who have pled. Cf. United States v. Mescual-Cruz, 387 F.3d 1, 6 (1st Cir. 2004), cert. denied, 543 U.S. 1175 (2005).

In the present case, the arguments for allowing the plea withdrawal are perhaps stronger than usual but the inferences are

quite mixed.  In Torres' favor are the facts that he almost immediately sought to withdraw the plea even though circumstances beyond his control delayed the message, that the government pressed him very hard to plead, and that he seemingly felt pressured even by his own lawyer.  Nor is it clear that the government's case would have been impaired by the brief delay if Torres had been allowed immediately to withdraw the plea and then gone to trial.

Yet Torres does not claim actual innocence, let alone suggest any basis for such a claim.  His main disputes are as to the amount of drugs (he agreed to 15-50 kilos of cocaine), whether firearms are attributable to him (he agreed), and his status as a leader or organizer (he agreed).  Whether he has a serious basis for disagreeing on any of these points is unclear; nor did the prosecutor have to agree to anything less as part of a bargain.[1]

Also equivocal is the fact, much stressed in Torres' brief, that he was given only 15 minutes in which to have the plea agreement translated to Spanish, read and digest its contents, and decide whether or not to take the plea.  Torres says that this rendered the plea involuntary, but this argument is complicated by yet other facts.  One is the history of Torres' prior discussions

---

[1]Torres also claims that he misunderstood that he was agreeing to forfeit his wife's interest in their house as well as his own. The plea agreement makes clear his agreeing to the latter; it is confusing as to the former but it is doubtful that anything Torres did say in the agreement could affect her rights nor does he provide any specifics.

with the government; the other is the subsequent plea colloquy at the Rule 11 hearing.

The government fairly notes that plea negotiations had begun several months before and that the main term of the plea agreement that Torres needed to consider was the sentence.[2]  In a letter dated May 17, 2004, the government offered (and Torres then rejected) an outline of a plea agreement containing substantially the same terms (firearms and role enhancement) as the final plea agreement--save that the cocaine amount stopped at 15 kilos so the sentencing range would have been 135 to 168 months.  The 11-year offer was seemingly open until the witness list was revealed.

Short periods for reflection are commonly all that is available when the defendant waits until the eve of trial to make up his mind to plead guilty.  United States v. Pagan-Ortega, 372 F.3d 22, 25 (1st Cir. 2004); United States v. Sanchez-Barreto, 93 F.3d 17, 23 (1st Cir. 1996), cert. denied, 519 U.S. 1068 (1997).  Perhaps the period here was short to adequately weigh 15 years as compared to the risk of conviction and a still longer sentence.  But one office of a Rule 11 hearing is to test and reaffirm the defendant's commitment to his plea.

---

[2]Torres also argues that he agreed to plead guilty to a sentence of 15 years rather than 15 years and 8 months, but the agreement provided for a sentence that was the higher of 180 months (15 years) or the lower end of the applicable sentencing guidelines calculation, which turned out to be 188 months (15 years 8 months). The magistrate judge explained this in the colloquy.

Here, the plea hearing conducted by the magistrate judge was impressively careful and Torres explicitly agreed to the amount of drugs and the now-disputed enhancements, each phrased as a separate question. Nothing in the colloquy indicated that Torres felt uncomfortable with his plea; indeed, the magistrate judge, taking note of the timing, asked whether Torres' change of plea was due to the disclosure of the evidence against him:

> **Magistrate**: I noticed that this plea agreement is date[d] September the 10th, that's today's date, in spite of that I would like to know if you have throughly [sic] discussed the contents of the plea agreement and if the terms and conditions with this plea agreement have been discussed prior to this date here in court?
>
> ...
>
> However it's my understanding that you intended to go to trial and that at some point you were either provided the names of the government witnesses or you were allowed to encounter them or see them and that's how you basically decided that the best way to dispose of this case was by pleading guilty, is that correct?
>
> **Mr. Torres**: Yes.

Such brief assurances are not conclusive if there is good reason for disregarding them (imagine the case in which both a plea and colloquy were achieved through undisclosed threats of violence). But nothing like that is alleged in this case. The trial judge, in later refusing to allow the withdrawal of the plea, was entitled to give weight to Torres' assurances at his change of

-12-

plea hearing.  <u>United States</u> v. <u>Martinez-Molina</u>, 64 F.3d 719, 733 (1st Cir. 1995); <u>Parrilla-Tirado</u>, 22 F.3d at 373.

On this record Torres has not shown that the district court abused its discretion in refusing to allow him to withdraw his plea.  The closer issue is whether we should remand for a full-scale evidentiary hearing on the plea withdrawal issue--prompted both by small uncertainties about just what occurred and an inevitable sense of unease about the issues of pressure and timing.  Yet a remand, which inflicts costs of its own, would make sense only if there were some likelihood of a different outcome.

In the end, we think that a remand is not warranted.  There are no proffers of further facts of importance (<u>e.g.</u>, as to other incidents of pressure) that, if proved, would tip the balance in favor of a right to withdraw the plea.  Nor is there even reason to think the ultimate drug amount and disputed enhancements were improper.  This is a case, like many, with imperfections but no clear indication either of legal error or an unjust result.

One loose end remains.  In his brief in this court, Torres also argues that he was entitled as a matter of right to withdraw his plea under Fed. R. Crim. P. 11(d)(1), which allows a guilty plea to be withdrawn before acceptance "for any reason or no reason."  Technically, because the Rule 11 hearing was conducted by a magistrate judge, the plea acceptance occurred only when the district judge adopted the magistrate's recommendation.  The docket

shows that this occurred on the same day as, and immediately before, the notation of receipt of Torres' motion to withdraw his plea.

Because this claim was not raised in the district court, our review is only for plain error. United States v. Olano, 507 U.S. 725, 732-36 (1993). We do not know when Torres' motion arrived in the district court or whether it was seen by the district judge before he accepted the previously tendered plea. Without delving into the legal issues presented by the entry of both documents on the same day, there is certainly no "plain error" in the district judge's failure sua sponte to treat the case as governed by Rule 11(d)(1).

Affirmed.