# United States Court of Appeals
## For the First Circuit

No. 08-1626

UNITED STATES OF AMERICA,

Appellee,

v.

ROBERTO E. PULIDO,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. William G. Young, U.S. District Judge]

Before

Lynch, Chief Judge,
Torruella, and Lipez, Circuit Judges.

Miriam Conrad, Federal Defender Office, with whom Behzad Mirhashem, were on brief for appellant.
Mark T. Quinlivan, Assistant United States Attorney, with whom Michael J. Sullivan, United States Attorney, was on brief for appellee.

May 20, 2009

**TORRUELLA**, **Circuit Judge**.  Defendant Roberto E. Pulido, a former Boston police officer, pled guilty to drug and firearm charges due to his involvement in two large cocaine deals.  This appeal raises several issues concerning his plea and sentencing.  After careful consideration, we affirm the district court in all respects.

## I. Background

We derive the facts from the trial preceding the plea, the change of plea colloquy, and the Presentence Report ("PSR").  See United States v. Jiminez, 498 F.3d 82, 84 (1st Cir. 2007).

In 2003, Pulido, a Boston police officer assigned to the mobile operations patrol, became the subject of a government investigation.  During the investigation the government learned, through the work of a cooperating witness, that Pulido was involved in a number of illegal ventures.  The ventures included, among other things, buying fraudulently obtained gift cards and providing protection for parties, hosted by another individual, Matthew West, that included drugs and prostitution.

In 2006, the government set up a sting operation in which undercover agents posed as both buyers and sellers of large amounts of cocaine.  The agents approached Pulido about providing protection for the shipment of cocaine.  Pulido recruited two Boston Police officers, Nelson Carrasquillo and, later, Carlos Pizarro, to participate.

-2-

The sting operation resulted in two transactions. The first transaction involved the transfer of approximately 40 kilograms of cocaine from one van to another at a garage leased by Pulido in Jamaica Plain. During this first transaction, the government contends that Pulido possessed a firearm, a fact that Pulido disputes. The second transaction involved the transportation of approximately 100 kilograms of cocaine from western Massachusetts to Boston. During the course of these transactions, Pulido had discussions with the undercover agents about establishing a "long relationship" and providing protection for future shipments of cocaine totaling an additional 1,000 kilograms of cocaine.

Pulido, Pizarro, and Carrasquillo were charged in a four count indictment, with Pulido charged under all four counts. Counts 1, 2, and 4 charged drug offenses under 21 U.S.C. §§ 846 & 841(b)(1)(A). Count 3 charged Pulido with using or carrying a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A). Both Pizarro and Carrasquillo pled guilty and received sentences of thirteen years and eighteen years respectively.

Pulido proceeded to trial. On November 8, 2007, after three days of trial, but prior to the introduction of drug quantity

evidence,[1] Pulido pled guilty to all four counts, offering an Alford[2] plea for Count 3.  The district court conducted a change of plea colloquy, with Pulido represented by attorney Rudolph Miller.

At the colloquy the district court confirmed that Pulido was entering "a straight up plea" and that Pulido was "not pleading with a plea agreement with the government."  Moreover, when the district court asked "[h]as the government said, look, if you plead guilty [the district court] will do this or do that?," Pulido responded "No, no sir. Nothing like that."  When the district court asked the government whether there had been a recommended sentence, the government similarly responded "No, your Honor."

During the colloquy, the district court informed Pulido that the highest guideline range he faced with respect to the drug charges if he were awarded a two-level reduction for acceptance of responsibility was 292 to 325 months.  However, at various times before and after stating this range, the district court informed Pulido that "I have to add five years on and after on the gun charge.  No question about that."

---

[1]  The district court noted that it was its practice to submit evidence as to drug quantity to the jury.

[2]  See North Carolina v. Alford, 400 U.S. 25, 37 (1970) ("An individual accused of crime may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime.").

-4-

Shortly thereafter, on November 30, 2007, Miller moved to withdraw as counsel, stating that the attorney-client relationship had broken down and was beyond repair. The motion was granted the same day and new counsel was appointed.

About five months later, on April 29, 2008, Pulido filed a motion to withdraw his guilty plea and requested an evidentiary hearing. Pulido claimed that his plea was not knowing and voluntary because (1) his former counsel, Miller, promised Pulido that he had obtained the government's promise to recommend a fifteen year sentence from the government, and (2) he was misinformed by the district court about the mandatory minimum sentence that applied to him. Pulido also moved for leave to file under seal an unredacted motion and affidavit, as well as a letter from his former counsel, Miller, to the Board of Bar Overseers. Pulido asserted that these documents supported his motion to withdraw his guilty plea. The government filed a response stating, in part, that it had no objection to an evidentiary hearing provided that Pulido would take the stand and subject himself to cross-examination. The government also filed, among other things, an affidavit from Miller stating that "[t]here was no negotiated plea deal and hence no recommended sentence."

On May 6, 2008, the district court denied Pulido's motion to withdraw his guilty plea and motions to seal in two separate

electronic orders.  The district court did not conduct an evidentiary hearing.

On May 14, 2008, Pulido moved to recuse the district court judge.  The basis of the motion was a sentencing memorandum that the district court issued a week earlier, on May 7, 2008, in separate case involving Matthew West.  The sentencing memorandum stated, in relevant part:

> <u>Together with a thoroughly corrupt police officer, Roberto Pulido ("Pulido")</u>, West ran an unlicensed after-hours bar and strip club rife with prostitution.  Looking to get the goods on Pulido (and perhaps other officers), the F.B.I. used an undercover informant to solicit West, seeking to purchase cocaine.

<u>United States</u> v. <u>West</u>, 552 F. Supp. 2d 74, 83 (D. Mass. 2008) (emphasis added).  The motion to recuse was denied two days later on May 16, 2008, without a hearing and without a response by the government.

Prior to sentencing, the defense submitted a sentencing memorandum and moved the court to impose a below guidelines sentence of 20 years, or 240 months.  In support, the defense submitted, among other things, a written report of a neuropsychological evaluation of Pulido, which concluded that his criminal conduct and moral decline was largely due to his heavy steroid use.  The defense also submitted numerous letters supporting Pulido, police department commendations, and information about Pulido's educational, employment, and personal history.

On May 16, 2008, the district court sentenced Pulido. The district court, following the PSR, calculated Pulido's guidelines sentencing range ("GSR") by setting his criminal history category at I and setting a base offense level of 36, based on 140 kilograms of cocaine. After adding a two-level enhancement for his role as an organizer or leader of the criminal activity, see U.S.S.G. § 3B1.1(c), a two level enhancement for his abuse of a position of trust, see U.S.S.G. § 3B1.3, and a two level reduction for acceptance of responsibility, see U.S.S.G. § 3E1.1, the district court calculated Pulido's base offense level as 38, which resulted in a GSR of 235 to 293 months, with an additional five-year term (60 months) of imprisonment to be imposed consecutively due to the mandatory minimum for the firearm charge. This resulted in a GSR of 295 to 353 months.

The district court adopted the government's recommendation of a sentence of 312 months, or 26 years. The district court, addressing Pulido, then stated that "the conduct related to these crimes, seem[s] utterly without redeeming qualities" and that, although Pulido was "abusing steroids . . . that's not an excuse." The district court concluded that "your conduct puts you so far beyond the comradeship of those people who wear that badge." The defense later raised the issue that the drug quantity in this case was not indicative of Pulido's culpability, since he was neither a buyer or seller of the drugs. The district

court responded "I take it into account. . . . But it did not particularly resonate with the Court and played [a] minimal role in my determination of the sentence."  Pulido now appeals.

## II.  Discussion

Pulido presents four issues on appeal.  We address each in turn.

### A.  Denial of Motion to Withdraw Guilty Plea

Pulido first argues that the district court erred when it denied his motion to withdraw his guilty plea without an evidentiary hearing.

Federal Rule of Criminal Procedure 11 provides that a defendant may withdraw his or her guilty plea prior to sentencing for any "fair and just reason." Fed. R. Crim. P. 11(d)(2)(B).  We have identified several factors to determine whether there is "fair and just reason" to permit a withdrawal of a guilty plea, "the most significant being whether the plea was voluntary, intelligent and knowing, within the meaning of Rule 11."  United States v. Marrero-Rivera, 124 F.3d 342, 347 (1st Cir. 1997) (emphasis added). Other factors include (1) the plausibility and weight of the reasons offered by the defendant; (2) the timing of the request; (3) whether there is a serious claim of actual innocence; (4) whether the parties reached (or breached) a plea agreement; and (5) any countervailing prejudice to the government if the defendant

is allowed to withdraw his plea.  See United States v. Sousa, 468 F.3d 42, 46 (1st Cir. 2006); Marrero-Rivera, 124 F.3d at 347.

"Absent errors of law, we review the decision to deny a motion to withdraw a guilty plea only for 'demonstrable abuse of discretion.'"  United States v. Alvarez-Del Prado, 222 F.3d 12, 15 (1st Cir. 2000) (quoting United States v. Martínez-Molina, 64 F.3d 719, 732 (1st Cir. 1995)).  However, an evidentiary hearing on a motion to withdraw a guilty plea is "required when a defendant alleges facts which, if taken as true, would entitle him to relief."  See United States v. González, 202 F.3d 20, 29 (1st Cir. 2000).  Specifically, a defendant is entitled to an evidentiary hearing unless the facts alleged are "'contradicted by the record or are inherently incredible and to the extent that they are merely conclusions rather than statements of fact.'"  United States v. Crooker, 729 F.2d 889, 890 (1st Cir. 1984) (quoting Otero-Rivera v. United States, 494 F.2d 900, 902 (1st Cir. 1974)); see also Machibroda v. United States, 368 U.S. 487, 496 (1962) (remanding for evidentiary hearing on motion to vacate sentence and withdraw guilty plea under § 2255 where allegations in support of the motion, "while improbable, cannot at this juncture be said to be incredible.").

Pulido argues that his motion alleges sufficient facts to support his claim that his guilty plea was not voluntary and knowing, such that he has asserted a "fair and just reason" to

withdraw his guilty plea. See Fed. R. Crim. P. 11(d)(2)(B). Accordingly, Pulido contends that he was entitled to an evidentiary hearing, and that the district court erred in denying his motion without one. Pulido argues, in particular, that his guilty plea was not voluntary and knowing because his prior counsel, Miller, erroneously represented to him that the government agreed to recommend a sentence of fifteen years if he pled guilty immediately. See McAleney v. United States, 539 F.2d 282, 284 (1st Cir. 1976) (affirming allowance of withdrawal of plea where defense counsel told his client that prosecutor agreed to a recommended sentence of three years, but no such promise was made). For support, Pulido points to the redacted affidavit he submitted with his motion, where he asserts that Miller, during the course of the proceedings, "told me . . . that the prosecutors had offered to recommend a sentence of no more than 15 years, the minimum mandatory sentence in the case, if I pled guilty immediately."

He also points to a letter his former counsel provided to the Board of Bar Overseers in response to a complaint from Pulido, excerpts of which were included in Pulido's motion.[3] According to Pulido, in the letter Miller stated that he obtained for Pulido "the option of a drastically reduced sentence" because he was able

---

[3] The letter itself was never filed. Pulido moved to file a redacted version of the letter under seal, but on May 6, 2008, the district court denied the motion as moot after it denied Pulido's motion to withdraw.

to get the government "to agree not to pursue the upcoming testimony of the thousand kilos if Pulido pled guilty." Miller further stated that "[i]f Pulido had waited until the government witness concluded his direct testimony he would have positively faced a 30 to life sentence. At this point, he faced a mandatory 15."

Finally, Pulido emphasizes that he admitted to enhancements for his role in the offense and for abuse of a position of trust. Pulido contends that he would not have made these concessions in the absence of a plea agreement with the government.

Based on our review of Pulido's allegations and the record, we conclude that Pulido was not entitled to an evidentiary hearing because his allegations were "contradicted by the record." Crooker, 729 F.2d at 890 (quotation marks omitted). Pulido's claim that his former counsel promised him that the government would recommend a mandatory minimum of fifteen years is contradicted by his representations to the district court at the change of plea colloquy:

> THE COURT: Now, it's obvious that on his behalf he's had discussions with the government and the government through him with you. I mean, you've talked, there isn't a bargain, things have been talked about here. But I take it a recommendation has not been talked about.
>
> GOVERNMENT: No, your Honor.

-11-

COURT: So you understand that when we come to sentence you, you don't know, you haven't got a full-scale plea bargain. There was this business about them recommending the two levels off if you plead guilty today and I'll let the jury go. And while I'm not going to hold them to that, I really do take that into account. But that's about the only thing I've heard on their part. They're going to make some recommendation what they think is appropriate under the law. Do you understand that?

MR. PULIDO: Yes, I do.

THE COURT: So, but for these general discussions back and forth, this is a, what's called a straight up plea. You're not pleading with a plea agreement with the government. Do you understand that?

MR. PULIDO: Yes, I do. Yes.

THE COURT: So, let me ask you this. Other than what I've been told and I've just been talking about, has anybody promised you anything to get you to plead guilty?

MR. PULIDO: Promised me? No. No, sir.

THE COURT: Well, what were you talking about? What were you thinking of?

MR. PULIDO: No one's promised me anything, sir, no.

THE COURT: Well, has anyone suggested to you what was going to happen to you if you pleaded guilty? I mean, other than your attorney, that's absolutely private between you.

MR. PULIDO: No.

THE COURT: But, I mean, has the government said, look, if you plead guilty [the district court] will do this or do that?

MR. PULIDO: No, no sir. Nothing like that.

-12-

This exchange shows that Pulido repeatedly denied that there was any agreement with, or promise by, the government to recommend anything, let alone a fifteen year sentence. See United States v. Torres-Rosario, 447 F.3d 61, 67 (1st Cir. 2006) (holding that a court is "entitled to give weight to [the defendant's] assurances at his change of plea [colloquy]" absent a "good reason for disregarding them"); see also Blackledge v. Allison, 431 U.S. 63, 74 (1977) (stating that a defendant's "declarations in open court carry a strong presumption of verity").

Pulido counters that there is no conflict. Pulido claims that when the district court asked whether he understood that there was no plea agreement with the government, he took that to mean that there was no written plea agreement. In addition, when the district court asked him, "[h]as the government said, look, if you plead guilty [the district court] will do this or do that?," he understood the question as only asking whether the government said to Pulido the district court "will do this or do that." Thus, Pulido argues that his "no" answer is consistent with his claim that it was Miller who told Pulido that the government would recommend a fifteen year sentence. For the same reason, Pulido contends that his "no" answer to the district court's question of whether "anyone suggested to you what was going to happen to you if you pleaded guilty? I mean, other than your attorney" also does

not conflict with his claim that Miller relayed to him that he obtained a fifteen year recommendation from the government.

Although these specific questions and answers do not contradict Pulido's allegations, the rest of the colloquy, when read as a whole, shows a conflict. See United States v. Isom, 85 F.3d 831, 835 (1st Cir. 1996) (noting that, on review of the denial of a motion to withdraw guilty plea, we "review[] the totality of the circumstances surrounding the Rule 11 hearing, rather than apply a 'talismanic test.' What is critical is the substance of what was communicated by the trial court, and what should reasonably have been understood by the defendant, rather than the form of communication" (quoting United States v. Cotal-Crespo, 47 F.3d 1, 4-5 (1st Cir. 1995))). As the above quoted exchange shows, when asked if he entered a "straight up plea," Pulido responded "yes." When asked if "anybody promised you anything to get you to plead guilty?" (which the district court asked prior to asking whether anyone "other than your attorney" promised him anything) Pulido responded "no," and further stated, after a conference with Miller, that "[n]o one's promised me anything, sir, no." In addition, although Pulido interprets the question "has the government said, look, if you plead guilty [the district court] will do this or that[?]" to exclude representations from Miller as to any plea agreement, his answer, "no, no sir. Nothing like that," suggests that he understood the question much more broadly.

-14-

Thus, when read as a whole, Pulido's representations at the change of plea colloquy belie his claim that Miller told Pulido that Miller had secured a recommendation of fifteen years.

Pulido argues that even if the colloquy conflicts with this claim, he is still entitled to an evidentiary hearing. Pulido cites case law where we have held that because "most defendants would be expected to deny any impropriety" during a plea colloquy, "courts have generally concluded that the Rule 11 record is 'evidential on the issue of voluntariness . . . not conclusive.'" See United States v. McCarthy, 433 F.2d 591, 593 (1st Cir. 1970) (citation omitted) (emphasis added). However, as we noted in Torres-Rosario, a court is "entitled" to rely upon the defendant's assurances at the colloquy unless "there is good reason for disregarding them," such as "the case in which both a plea and colloquy were achieved through undisclosed threats of violence." 447 F.3d at 67. No such "good reason" is alleged in this case. Moreover, we have typically disregarded representations at a plea colloquy "only when the allegations were highly specific and usually accompanied by some independent corroboration." United States v. Butt, 731 F.2d 75, 80 n.5 (1st Cir. 1984) (citing cases in the § 2255 context) (emphasis added). As shown below, Pulido's allegations have no "independent corroboration" to support disregarding his representations at the change of plea colloquy.

-15-

Thus, we not only view his plea colloquy as "evidential," but sufficiently "conclusive" to contradict his claims.

Pulido points to a letter by Miller to the Board of Bar Overseers as further substantiating his claims. In particular, Pulido contends that Miller's statement in the letter that he obtained "the option of a drastically reduced sentence" supports Pulido's allegation that Miller obtained a recommendation of a fifteen year sentence from the government. Not so. The references that Pulido himself quotes only state that Miller obtained "a drastically reduced sentence" by getting the government "to agree not to pursue the upcoming testimony of the thousand kilos if Pulido pled guilty." Contrary to Pulido's contention, no mention is made in the letter of Miller obtaining a specific <u>recommendation</u> from the government, only of preventing the government from entering additional evidence of drug weight. Likewise Miller's mention in the letter that Pulido "faced a mandatory 15" does not support Pulido's allegation that Miller secured a <u>recommendation</u> of only "15."[4]

---

[4] At oral argument, Pulido contended that the discrepancy between (1) Miller's statement that he was able to get the government "to agree not to pursue the upcoming testimony of the thousand kilos if Pulido pled guilty," and (2) the government statements at the change of plea colloquy that it reserved its right to present evidence of the additional 1,000 kilograms of cocaine during sentencing, supports his claim that his guilty plea was not knowing and voluntary. Pulido argues that this discrepancy shows that Miller misunderstood the government's position, and thus misinformed that position to Pulido, such that his plea was not knowing and voluntary.

-16-

Moreover, Pulido's claim that he would not have made concessions at the change of plea colloquy in the absence of a plea agreement fails to corroborate his claim. Apart from his explicit denial of any plea agreement at the change of plea colloquy, there was an equally strong reason to make such concessions, one supported by the record -- to prevent the introduction of evidence at trial that Pulido was responsible for an additional 1,000 kilograms of cocaine. This is confirmed by Miller's statement in his letter that "[i]f Pulido had <u>waited</u> until the government witness concluded his direct testimony he would have positively faced a 30 to life sentence." (emphasis added).

In the alternative, Pulido contends that his guilty plea was not voluntary and knowing because the district court provided him misinformation; in particular, that the district court told him that he faced a minimum sentence of 292 months, but did not include

---

However, that is not the precise claim that Pulido made either in his motion to withdraw or in his brief. Pulido contended in his motion and his brief that Miller made a specific misrepresentation -- that the government would agree to recommend a fifteen year sentence. Thus, his argument as to this new, broader "misrepresentation" is arguably waived. <u>See</u> <u>United States</u> v. <u>Giggey</u>, 551 F.3d 27, 36-37 (1st Cir. 2008) ("[E]xcept in extraordinary circumstances, arguments not raised in a party's initial brief and instead raised for the first time at oral argument are considered waived." (quoting <u>United States</u> v. <u>Pizarro-Berríos</u>, 448 F.3d 1, 5 (1st Cir. 2006))). More importantly, Pulido would not have been prejudiced by any such misrepresentation. As it turned out, the government, in fact, did not introduce evidence of the additional 1,000 kilograms at sentencing. <u>See</u> Fed. R. Crim. P. 11(h) ("A variance from the requirements of this rule is harmless error if it does not affect substantial rights.").

the 60 month consecutive sentence for the firearm count.  See United States v. Santo, 225 F.3d 92, 99 (1st Cir. 2000) (holding that a district court's understatement of the minimum mandatory sentence because of an error about drug weight warranted withdrawal of guilty plea).

We disagree.  During the plea colloquy the district court informed Pulido that:

> If you plead guilty here today, and all we're talking about really, the only thing that's going to make any difference from 360 to life is whether I'm going to give you a discount for pleading guilty.  They say that if you plead guilty they'll recommend two levels off and that takes you down to 292 to 365 in terms of months.

Here, Pulido contends that the district court neglected to inform him that the recommended 292 month minimum does not include the 60 month mandatory consecutive sentence under the firearm charge.  However, in prefacing the discussion of this range, the district court stated:

> THE COURT: I'm trying to make clear how I go about sentencing.
> Now, the two levels off can't be off the five years on the gun charge.  They're off the drug charges, and then the five years goes on and after because Congress has told me that.
> Do you understand that?
>
> MR. PULIDO: Yes.
>
> THE COURT: Now let's get to these.  And what I'm going to ask him to do is, I'm going to ask him to assume the worst because you're facing the potential worst.  Assume the enhancements that you say you will agree to

-18-

> and assume another thousand kilos is
> attributable to you. And then I want him to
> tell me, if I factor those things in, and
> don't take anything off, what the range is.

(emphasis added). Thus, in discussing the guideline range, the district court made clear that it was discussing the drug charges in isolation (what the district court referred to as "these"), noting that the "five years goes on and after" due to the firearm charge.

At other times in the change of plea colloquy the district court also distinguished between the drug charges and the firearm charge. For example, earlier in the colloquy, the district court stated "let's talk about the drug charges," going over the drug quantity Pulido was willing to admit to and Pulido's admission that he abused a position of trust. The district court then pivoted and turned to "the gun charge, let's talk about that," noting that "I have to add five years on and after" for it. Much later in the colloquy, in discussing the impact of the Alford plea, the district court stated to Pulido that "in my mind, though I have listened to you and I'll hear everything as to the drugs," he planned to note that Pulido "pleaded guilty to the gun charge, [where] he gets five years on and after."

Thus, when the colloquy is viewed as a whole, the district court (1) separated its discussion of the drug charges from the gun charge, (2) repeatedly represented that it would have to add five additional years to any sentence due to the firearm

-19-

charge, and (3) only represented a minimum of 292 months with respect to the drug charges. Although we have acknowledged that the "guidelines are complicated," see United States v. Yates, 973 F.2d 1, 5 (1st Cir. 1992), we do not find that the district court misinformed Pulido. Accordingly, the colloquy contradicts Pulido's assertion that he was, in fact, misinformed.

We conclude by noting that other considerations also support the district court's denial of Pulido's motion to withdraw his guilty plea. First, although Pulido entered an Alford plea with respect to the firearm charge, he did not maintain his innocence as to his involvement in the two cocaine transactions. See United States v. Torres-Rosa, 209 F.3d 4, 9 (1st Cir. 2000) ("The absence of an assertion of innocence counsels against allowing the plea to be withdrawn."). Second, although Pulido changed counsel between his change of plea and his motion, he did not provide any reason for the five month delay in filing his motion. See, e.g., Sousa, 468 F.3d at 46-47 ("Sousa's five month delay in moving to withdraw his plea also counsels against permitting withdrawal."); United States v. Rodríguez-León, 402 F.3d 17, 26 (1st Cir. 2005) (three month delay "with no explanation" supported denial of motion to withdraw guilty plea).

For all of these reasons, we find that the district court did not commit reversible error in denying Pulido's motion to withdraw his guilty plea without conducting an evidentiary hearing.

### B. Denial of Motion to Recuse

Pulido also challenges the denial of his motion to recuse based on the district court's statement in a different, though related, case, that he was "a thoroughly corrupt police officer." West, 552 F. Supp. 2d at 83. Defendant contends that this statement, made prior to his sentencing, required the district court judge to recuse himself.

Recusals are governed by 28 U.S.C. § 455(a), which provides that a judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." (emphasis added). The statute "forbids not only the reality of partiality but its objective appearance as well." United States v. Snyder, 235 F.3d 42, 45 (1st Cir. 2000) (quoting Liteky v. United States, 510 U.S. 540, 548 (1994)).

We review a ruling on a motion to recuse for abuse of discretion, although "in close cases doubts ordinarily ought to be resolved in favor of recusal." Id. at 46 (quoting In re United States, 158 F.3d 26, 30 (1st Cir. 1998)). In conducting that review, this Court will sustain the district court's ruling "unless we find that it cannot be defended as a rational conclusion supported by [a] reasonable reading of the record." United States v. Vázquez-Botet, 532 F.3d 37, 47 (1st Cir. 2008) (internal quotation omitted).

This is not a close case. Pulido argues that the district court's description of him as a "thoroughly corrupt police officer" in the <u>West</u> sentencing memorandum made it reasonably apparent to the public -- and to Pulido -- that the judge's mind was already closed to evidence that might mitigate Pulido's crimes, thereby mandating the court's recusal. In fact, according to Pulido, the district court revealed its antipathy towards him during sentencing when it stated "[Y]ou are one that, in the conduct related to these crimes, seem[s] utterly without redeeming qualities."

Although any appearance of partiality is forbidden, the Supreme Court has held that "opinions formed by the judge on the basis of facts introduced or events occurring in the course <u>of the current proceedings, or of prior proceedings</u>, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." <u>Liteky</u>, 510 U.S. at 555 (emphasis added). Here, the district court had the benefit of the West trial, which discussed Pulido's criminal activities extensively, the guilty pleas of Pulido's co-defendants, Pizarro and Carrasquillo, the three days of Pulido's interrupted trial, and Pulido's own change of plea colloquy, to support its statement that he was a "thoroughly corrupt police officer." As for the district court's statements during sentencing, the district court was referring to Pulido's

"conduct," which the district court had ample evidence to comment on, and, in any event, the district court had discretion to place greater emphasis on Pulido's crimes rather than the mitigating evidence submitted on his behalf. See United States v. Deppe, 509 F.3d 54, 62 (1st Cir. 2007).

Considering the evidence and the pleas reviewed by the district court, we find no likely appearance of partiality. Thus, no abuse of discretion occurred.

## C. Consideration of § 3553(a) Factors

Pulido also contends that the district court committed reversible procedural error by failing to consider mitigating evidence during sentencing. Pulido had submitted as mitigating evidence a written report of a neuropsychological evaluation which concluded, among other things, that his conduct was largely due to his heavy steroid use. Pulido also submitted numerous supportive letters, police department commendations, and information about Pulido's educational, employment, and personal history.

After the district court accepted the government's recommendation, and imposed a twenty-six year sentence, the district court stated the following:

> Now, Mr. Pulido. The crimes of which you
> stand convicted are striking in the evil that
> they work upon our society. And you are the
> author of those crimes. You involved the
> other people. You did seek a criminal
> life-style. We may talk about averages. We
> may talk about other offenders. But you are
> the one that, in the conduct related to these

-23-

crimes, seem utterly without redeeming qualities.

I accept that you were abusing steroids. As Ms. Conrad argued on your behalf, that's not an excuse; that does not take away from the danger to the community that you posed by your voluntary use of steroids.

This city gave you a badge. It gave you other equipment, but it gave you a badge. A badge that stand for during that period your part in one of the oldest police departments in the nation.

With that badge it is expected that you have a sense of duty. A famous American once said that duty is the noblest word in the English language. You have no sense of duty. You are in the commission of these crimes utterly dead to a sense of duty.

The people who wear that badge have a sense of honor. We don't speak much about honor in society today, where we talk mostly about salaries. But those people have a sense of honor that goes with that badge.

You are dead to that sense of honor. You are not one of that number. Your conduct puts you so far beyond the comradeship of those people who wear that badge.

This is a fair and just sentence.

The defense later raised the issue that the drug weight here was not indicative of Pulido's culpability, since he was neither a buyer or seller. The district court responded "I take it into account. . . . But it did not particularly resonate with the Court and played [a] minimal role in my determination of the sentence."

Typically, the reasonableness of a sentence within the guidelines range is reviewed under the "deferential

-24-

abuse-of-discretion standard." Gall v. United States, 128 S. Ct. 586, 591 (2007). However, "failing to consider the § 3553(a) factors" constitutes procedural error. Id. at 597. Pulido argues that the district court failed to consider certain mitigating evidence related to the § 3553(a) factors, and thus committed procedural error.[5]

There was no error. Pulido argues that a fair reading of the sentencing record as a whole, including the parties' memoranda and the transcript of the sentencing hearing, demonstrates that the district court did not consider the mitigating evidence presented by the defense. See Rita v. United States, 127 S. Ct. 2456, 2468 (2007) ("Where the defendant or prosecutor presents nonfrivolous reasons for imposing a . . . sentence, . . . the judge will normally . . . explain why he has rejected those arguments."); United States v. Scherrer, 444 F.3d 91, 97 (1st Cir. 2006) (en banc) (Lipez, J., concurring) ("[W]hen the defendant or the government advances specific arguments for leniency or severity, grounded in the defendant's history or the circumstances of the offense, it is reasonable to expect a district court to explain why those specific arguments are or are not persuasive.").

We disagree with Pulido's reading of the record. As the above shows, while the district court acknowledged the abuse of

---

[5] The parties dispute whether the issue is preserved, or whether plain error review applies. Since we find no error, plain or otherwise, we do not need to resolve this dispute.

-25-

steroids evidence that Pulido argued mitigated the offense, it did not find this evidence persuasive. Nor did the district court find persuasive Pulido's argument that drug weight is not indicative of Pulido's guilt. Moreover, the district court noted earlier in the proceeding that it had "read all the letters that have been submitted save for those that have just been handed to me and I'm going to take the time to read those." Thus, the record shows that the district court considered all of the mitigating evidence.

More importantly, we have held that a sentencing court is not required to address the § 3553(a) factors "one by one, in some sort of rote incantation when explicating its sentencing decision," nor must the court "afford each of the section 3553(a) factors equal prominence." United States v. Dixon, 449 F.3d 194, 205 (1st Cir. 2006). Here, the district court chose to emphasize some factors over others; in particular, it emphasized that (1) the egregious nature of Pulido's criminal conduct, (2) the fact that he committed those crimes while a Boston police officer, and (3) the danger which his crimes posed to society, all warranted a sentence of twenty-six years. See 18 U.S.C. § 3553(a)(1) (sentence should reflect the nature and circumstances of the offense and the history and characteristics of the defendant); id. § 3553(a)(2)(A) (sentence should reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense); id. § 3553(a)(2)(B) (sentence should afford adequate deterrence to

criminal conduct); id. § 3553(a)(2)(C) (sentence should protect the public from further crimes of the defendant).  Thus, we view the district court's decision as "'entail[ing] a choice of emphasis, not a sin of omission,' [which] is 'not a basis for a founded claim of sentencing error.'"  United States v. Rodríguez, 525 F.3d 85, 110 (1st Cir. 2008) (quoting Deppe, 509 F.3d at 62); see also United States v. Jiménez-Beltre, 440 F.3d 514, 519 (1st Cir. 2007) (en banc) ("[A] court's reasoning can often be inferred by comparing what was argued by the parties or contained in the pre-sentence report with what the judge did.").  Accordingly, no procedural error occurred.

### D.  Imposition of Consecutive Mandatory Minimum

The fourth issue concerns whether it was plain error for the district court to impose the mandatory minimum sentence for the firearm count under 18 U.S.C. § 924(c), when Pulido was also subject to a mandatory ten-year sentence under 21 U.S.C. § 841(b)(1)(A) because his offenses involved more than five kilograms of cocaine.  Because Pulido failed to object on this ground at sentencing, the parties agree that we review for plain error.  See United States v. Olano, 507 U.S. 725, 732 (1993).

18 U.S.C. § 924(c)(1)(A) provides, in relevant part, that:

> Except to the extent that a greater minimum
> sentence is otherwise provided by this
> subsection or by any other provision of law,
> any person who, during and in relation to any

-27-

> crime of violence or drug trafficking crime
> . . . uses or carries a firearm, or who, in
> furtherance of any such crime, possesses a
> firearm, shall, in addition to the punishment
> provided for such crime of violence or drug
> trafficking crime--
> (I) be sentenced to a term of imprisonment of
> not less than 5 years . . .

(emphasis added).

In United States v. Parker, 549 F.3d 5 (1st Cir. 2008), cert. denied, 129 S. Ct. 1688 (2009), we held that the "except clause" highlighted above did not apply when the defendant was subject to a mandatory ten-year term of imprisonment "by virtue of the amount of drugs recovered." Id. at 10-12. In so holding, we were in accord with the majority of other circuits who have interpreted the "except clause." See id. at 11 n.4 (citing cases from the Fourth, Fifth, Sixth, and Eighth Circuits).[6] Because Parker is on point, Pulido cannot show an error, let alone a plain one, and his claim fails.

### III. Conclusion

For the foregoing reasons, we **affirm** the district court in all respects.

---

[6] Since the filing of the briefs, the Second Circuit issued United States v. Williams, 558 F.3d 166 (2d Cir. 2009), which takes the opposite approach. There, the Second Circuit held that the "except clause" applied "where the defendant is subject to a longer mandatory minimum sentence for a drug trafficking offense that is part of the same criminal transaction or set of operative facts as the firearm offense." Id. at 168. Pulido argues that Parker was wrongly decided, and contends that the reasoning of the Second Circuit in Williams is more persuasive. However, Parker remains the law of this circuit, and is directly on point.

**Affirmed**.