# United States Court of Appeals
## For the First Circuit

No. 14-1815

DARREN F. WILDER,

Petitioner, Appellant,

v.

UNITED STATES OF AMERICA,

Respondent, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Denise J. Casper, U.S. District Judge]

Before

Torruella, Lynch, and Kayatta,
Circuit Judges.

Michael R. Schneider, with whom Jeffrey G. Harris and Good Schneider Cormier were on brief, for appellant.
Kelly Begg Lawrence, Assistant United States Attorney, with whom Carmen M. Ortiz, United States Attorney, was on brief, for appellee.

November 20, 2015

**LYNCH**, **Circuit Judge**.  Darren Wilder was convicted in March 2006, after a jury trial, of transportation, receipt, and possession of child pornography in violation of 18 U.S.C. § 2252. We affirmed his conviction on direct appeal and noted that the evidence against him was very strong.  See United States v. Wilder, 526 F.3d 1, 7–12 (1st Cir. 2008), cert. denied, 555 U.S. 1050 (2008).

Wilder now appeals the district court's denial of his petition for a writ of habeas corpus under 28 U.S.C. § 2255, in which he claimed, for the first time, that the jury selection process for his trial violated his Fifth Amendment right to be present and his Sixth Amendment right to a public trial.  Because Wilder cannot overcome his procedural default from not pursuing either claim at trial or on appeal, we affirm the denial of habeas relief.

I.

The facts surrounding Wilder's underlying conviction are set forth in our prior opinion.  Wilder, 526 F.3d at 3–5.  We summarize only the facts relevant to this appeal.

On December 1, 2009, Wilder filed a motion under 28 U.S.C. § 2255 seeking to vacate his conviction on numerous grounds. On May 14, 2012, Judge O'Toole denied the motion, with the exception of two constitutional claims regarding jury selection that he reserved for an evidentiary hearing.  The matter was then

reassigned to Judge Casper so that Judge O'Toole could serve as a fact witness concerning the conduct of voir dire. On July 22, 2014, after an evidentiary hearing involving testimony and affidavits from trial participants, including Judge O'Toole, the district court denied both remaining claims.

The district court (Judge Casper) made the following findings of fact. Trial began on March 13, 2006. Wilder and Wilder's girlfriend, parents, stepmother, and mother's friend were present in the courtroom when the jury venire was brought into the courtroom. In open court, the trial judge (Judge O'Toole) explained the nature of the charges against Wilder and then asked the jury venire a series of questions as a group. After all of the potential jurors responded affirmatively to the question of whether he or she was a regular or frequent internet user, the trial judge indicated that "we're going to end up talking to all of you in the back."

The trial judge and counsel for both parties then proceeded to meet with potential jurors one by one in the jury deliberation room behind the courtroom. That room is not open or visible to those in the courtroom. However, those in the courtroom could see potential jurors as they left from and returned to the courtroom. It took the rest of the morning and most of the afternoon to go through the individual voir dire of each juror. In the back room, each individual potential juror was asked follow-

up questions to those asked in open court as well as a question about whether child pornography evidence would so emotionally disturb the potential juror as to make him or her incapable of remaining impartial. Counsel exercised for-cause challenges as each juror left the room. The reason for conducting this portion of voir dire in the jury deliberation room, the trial judge attested, was to "support[] the juror's interest in privacy and thus promote[] full and candid answers." While he did not have any recollection specific to this case, this was his general practice in "a small number of cases," including child pornography cases. There was no objection to this procedure from either counsel.

Neither Wilder nor his family was present for that portion of the individual voir dire that took place in the jury deliberation room. Counsel was certainly present. Indeed, Wilder's counsel instructed Wilder and his family to stay in the courtroom in case Wilder was needed. Neither Wilder nor any other person ever made a request to enter and be present in the jury deliberation room.

After the individual questioning was completed, the jury selection proceedings resumed in open court. Defense counsel conferred with Wilder before exercising peremptory challenges. Both the prosecution and defense counsel then exercised peremptory

challenges at sidebar. The trial judge then gave some cautionary instructions to the jury and excused the jury for the day.

In his petition, Wilder does not assert that the exercise of peremptory challenges at sidebar violated his constitutional rights. He challenges only those portions of the voir dire that took place in the jury room.

Wilder's defense counsel made no objection to any portion of this individual voir dire procedure. He testified that while he knew that Wilder had a Fifth Amendment right to be present at jury selection, he generally advises his criminal defendant clients against participating in individual jury selection conferences to avoid making potential jurors feel "awkward" by having to face the defendant in a small space. While he did not have a specific recollection of having advised Wilder as such, he testified that it was his general practice to do so. On the other hand, Wilder testified that he had not been advised of such a right and that if he had been advised, he would have invoked the right even against his defense counsel's advice. The prosecutor attested that defense counsel had in fact informed the trial court that Wilder did not wish to be present. Defense counsel had no recollection to the contrary. The district court found Wilder not credible and credited the testimony of his defense counsel and the prosecutor.

Wilder's defense counsel did not advise Wilder about his Sixth Amendment right to have members of the public present at jury selection because he "did not know that such a right existed." Wilder testified that had he been advised, he would have invoked that right as well.

Upon making these findings, the district court began its analysis by noting that Wilder did not raise either the Fifth Amendment or the Sixth Amendment claim at trial or on direct appeal. Accordingly, the claims were procedurally defaulted unless Wilder could show cause for having procedurally defaulted as well as actual prejudice resulting from the alleged errors.

The district court dismissed the Fifth Amendment claim on the basis of Wilder's failure to excuse procedural default. It found that Wilder's counsel had made a reasonable strategic choice to waive the right, and it did not credit Wilder's claim that he was never advised of the right. As a result, Wilder could not show cause sufficient to excuse the procedural default. The district court also concluded that Wilder could not establish actual prejudice because his presence would not have necessarily resulted in a different jury composition or verdict, particularly given the weight of the evidence against him.

The district court also dismissed the Sixth Amendment claim on the basis of procedural default. It distinguished this case from the complete closure in Owens v. United States, 483 F.3d

- 6 -

48, 61-66 (1st Cir. 2007), which was decided a year after the trial. Unlike in Owens, the district court found, the first phase of jury selection took place in open court and Wilder and his family remained in the courtroom throughout the day. In fact, conducting the individual voir dire in the jury deliberation room was essentially "the functional equivalent" of a sidebar conference. The district court decided that defense counsel's failure to object to what was at most a partial closure did not justify an assumption of ineffective assistance of counsel that would excuse procedural default. That was because competent defense counsel could have chosen not to object as a strategic matter. The district court also declined to find a structural error that would justify a presumption of prejudice and found that no actual prejudice had been shown.

Finding the issue of procedural default of the Sixth Amendment claim "a closer call," the district court then proceeded to also reject the claim on the merits. Noting that a less stringent standard applied to partial closures than to complete closures, it found that the partial closure was justified by the "substantial interest" in eliciting candid answers from potential jurors. The district court, based on these findings, denied the habeas claims.

On September 5, 2014, the district court granted Wilder's application for a certificate of appealability from the

dismissal of his petition, but only as to the two jury selection claims.  This appeal followed.

## II.

### A.  Standard of Review and § 2255 Framework

A petitioner in federal custody may seek post-conviction relief if, inter alia, his sentence "was imposed in violation of the Constitution or laws of the United States" or "is otherwise subject to collateral attack."  28 U.S.C. § 2255(a).  The burden of proof is on the petitioner.  David v. United States, 134 F.3d 470, 474 (1st Cir. 1998).  In reviewing a district court's denial of a § 2255 motion, we review the district court's legal determinations de novo and any findings of fact from an evidentiary hearing for clear error.  Owens, 483 F.3d at 57.

Because Wilder is raising his Fifth and Sixth Amendment claims for the first time on habeas, he must show both "cause" that excuses the procedural default and "actual prejudice" resulting from the alleged error.  Bousley v. United States, 523 U.S. 614, 622 (1998); United States v. Frady, 456 U.S. 152, 167–68 (1982).  One way to meet the cause requirement is to show constitutionally ineffective assistance of counsel under Strickland v. Washington, 466 U.S. 668 (1984).  See Coleman v. Thompson, 501 U.S. 722, 753–54 (1991).  To meet the actual prejudice requirement, Wilder must show that "there is a reasonable probability" that the outcome of the trial would have been

- 8 -

different but for the alleged error.  Strickler v. Greene, 527 U.S. 263, 289 (1999).  A structural error is considered per se prejudicial.  Owens, 483 F.3d at 64.  A structural error is one "affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself."  Neder v. United States, 527 U.S. 1, 8 (1999) (quoting Arizona v. Fulminante, 499 U.S. 279, 310 (1991)).  "Such errors 'infect the entire trial process,'" id. (quoting Brecht v. Abrahamson, 507 U.S. 619, 630 (1993)), and "necessarily render a trial fundamentally unfair," id. (quoting Rose v. Clark, 478 U.S. 570, 577 (1986)).

B.   Fifth Amendment Claim

A criminal defendant has a due process right to be present at all stages of his trial for which his absence might frustrate the fairness of the proceedings -- a category that includes jury empanelment.  United States v. Ramírez-Rivera, 800 F.3d 1, 39-40 (1st Cir. 2015); see also United States v. Gagnon, 470 U.S. 522, 526 (1985) (per curiam).  Wilder argues that this right was violated by his exclusion from the individual voir dire in the jury room.  However, his claim cannot survive procedural default.

Because Wilder did not raise a contemporaneous objection and did not raise the issue on direct appeal, we do not reach the merits unless he shows cause for the procedural default, as well as actual prejudice.  The district court's factual findings, which

were not clearly erroneous, prevent Wilder from showing ineffective assistance of counsel that would meet the cause requirement. Defense counsel testified that even though he had no specific recollection of this case, it was his general practice to advise clients to waive this right because potential jurors may be more likely to be candid as to sensitive matters when they are not made to feel "awkward" by close proximity to the defendant. The district court credited that testimony, as well as the testimony of the prosecutor that defense counsel had advised the trial judge that Wilder did not wish to be present. Meanwhile, the district court refused to credit Wilder's testimony denying that defense counsel mentioned to him the reason for not attending individual voir dire (i.e., to get more candid answers from jurors).

Defense counsel's waiver of the right on behalf of Wilder was part of a "sound trial strategy" and so was not ineffective assistance of counsel. See Strickland, 466 U.S. at 689 (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)). As the Supreme Court has recognized, defendants have an interest in eliciting candid statements by jurors on their potential biases:

> Voir dire examination serves to protect [the right to an impartial trier of fact] by exposing possible biases, both known and unknown, on the part of potential jurors. Demonstrated bias in the responses to questions on voir dire may result in a juror being excused for cause; hints of bias not sufficient to warrant challenge for cause may assist parties in exercising their peremptory

- 10 -

challenges.    The   necessity   of   truthful
answers by prospective jurors if this process
is to serve its purpose is obvious.

McDonough Power Equip., Inc. v. Greenwood, 464 U.S. 548, 554 (1984); see also Press-Enterprise Co. v. Superior Court of Cal., 464 U.S. 501, 515 (1984) (Blackmun, J., concurring) (explaining that "the defendant has an interest in protecting juror privacy in order to encourage honest answers to the voir dire questions"). Defense counsel did not provide ineffective assistance by agreeing to a procedure meant to obtain more truthful answers from potential jurors.  See Horton v. Allen, 370 F.3d 75, 81 (1st Cir. 2004) (explaining that defense counsel engaged in "objectively reasonable strategy designed to elicit forthcoming responses from the jurors about racial bias" by agreeing to individual voir dire being conducted in private room).

Beyond that, Wilder did not meet his burden to show actual prejudice.  The district court did not err in finding that there was not a reasonable probability that his presence during the individual voir dire would have resulted in a different jury composition or verdict.  While Wilder argues that his presence would have affected the outcome because he would have asked certain jurors follow-up questions, requested more definite answers, or made additional for-cause challenges, it requires too much speculation to say that the outcome would have been different. See United States v. Rivera-Rodríguez, 617 F.3d 581, 603-04 (1st

- 11 -

Cir. 2010) (finding no prejudice from district court's individual, ex parte voir dire of fifteen prospective jurors, reasoning that finding prejudice would require "too many assumptions" about how the jurors would have answered any further questions, whether any for-cause challenges would have been attempted and been successful, and whether any replacement jurors would have voted to acquit); United States v. Gonzalez-Melendez, 594 F.3d 28, 34 (1st Cir. 2010) (finding no prejudice from procedural error in exercise of peremptory challenges, on the basis that "[i]t is not evident that the composition of the jury would have differed . . . [and] there is no basis in the record for concluding that the alteration in jury composition had an injurious influence on the verdict"). The claim that a different jury composition would have changed the outcome is especially speculative here. As we noted on direct appeal, the evidence against Wilder was "more than sufficient." Wilder, 526 F.3d at 9. As a result, Wilder's Fifth Amendment claim is procedurally defaulted.

C.    Sixth Amendment Claim

As part of the right to a public trial, the Sixth Amendment guarantees public jury selection. Presley v. Georgia, 558 U.S. 209, 212-13 (2010) (per curiam) (citing Waller v. Georgia, 467 U.S. 39, 46 (1984); Press-Enterprise Co., 464 U.S. at 510). Wilder argues that this right was violated by the exclusion of his family and friends from the closed-door individual voir dire.

- 12 -

Wilder, though, cannot overcome his failure to raise this claim at trial or on direct appeal.

The district court correctly decided that Wilder failed to meet the cause requirement for overcoming procedural default. Wilder argues that because his counsel's failure to object was due to ignorance of the law, he received ineffective assistance of counsel that satisfies the cause requirement. However, the ineffective assistance of counsel inquiry is concerned with objective reasonableness rather than what counsel did or did not know. See Bucci v. United States, 662 F.3d 18, 31–32 & n.11 (1st Cir. 2011) (finding no ineffective assistance of counsel even when counsel did not recognize potential Sixth Amendment violation); see also Harrington v. Richter, 562 U.S. 86, 110 (2011) ("Strickland . . . calls for an inquiry into the objective reasonableness of counsel's performance, not counsel's subjective state of mind."). Objectively reasonable counsel could have made a strategic choice not to object to the selection procedure here, for the same reason that the district court found Wilder's counsel reasonably advised him to waive his Fifth Amendment right. See Horton, 370 F.3d at 82–83. Indeed, it is difficult to think that trial counsel, having advised Wilder against coming to the jury room under the Fifth Amendment, would have advised the contrary for him or his family under the Sixth Amendment.

As to the prejudice requirement for overcoming procedural default, Wilder cannot show actual prejudice for the same reasons that he cannot show actual prejudice on his Fifth Amendment claim. Instead, Wilder relies on a characterization of the jury selection process as a complete closure of the courtroom and argues that because a complete closure is a structural error, he need not show actual prejudice. See Owens, 483 F.3d 65–66. The district court, however, correctly found that the procedures used were "the functional equivalent" of a sidebar conference. The only difference between these procedures and a sidebar conference was that members of the public could not observe the individual questioning from their seats in the spectator gallery and attempt to discern facial expressions or body language, and the district court did not err in finding no functional difference between the two.

Wilder does not claim that holding portions of voir dire at sidebar violates the Sixth Amendment. See Richmond Newspapers, Inc. v. Virginia, 448 U.S. 555, 598 n.23 (1980) (Brennan, J., concurring in the judgment) (suggesting that public trial right does not extend to sidebar conferences); United States v. Vaghari, 500 F. App'x 139, 150 (3d Cir. 2012) (noting that conducting portions of voir dire at sidebar is a "commonly accepted practice"); United States v. Bansal, 663 F.3d 634, 661 (3d Cir. 2011) (describing jury selection procedures like those at issue

here and stating that "we are aware of no case holding that such procedures offend the Sixth Amendment").  Indeed, peremptory challenges in this case were exercised at sidebar, and Wilder does not challenge that part of the procedure.  As such, we find no error in the district court's conclusion that there was no complete closure and thus no structural error and no per se prejudice from any alleged error.  Wilder cannot overcome procedural default on his Sixth Amendment claim.[1]

## III.

For the reasons stated, we <u>affirm</u>.

**-Concurring Opinion Follows-**

---

[1] There was also no error under <u>Waller</u>.  The full procedures outlined in <u>Waller</u>, 467 U.S. at 48, do not apply where the trial court was conducting the functional equivalent of properly conducted sidebar portions of voir dire.

**TORRUELLA**, **Circuit Judge, concurring**.  For Wilder's Sixth Amendment claim, the majority explains that there was no error under Waller v. Georgia, 467 U.S. 39 (1984), as these proceedings were tantamount to a sidebar.  In this way, the majority has effectively written closure out of this case.  But to characterize this event as anything other than a closure is to ignore the egregious facts at issue:  whereas a sidebar is held in open court, where all the public can observe (even if they cannot hear) the proceedings, here, the most critical portion of voir dire was held behind closed doors.[2]

This reasoning is a far cry from Owens v. United States, 483 F.3d 48 (1st Cir. 2007), where we discussed the central importance of the public trial guarantee.  In Owens, the courtroom had been "closed to the public for an entire day" of jury selection due to space constraints.  Id. at 64.  We found that the denial of a public trial is a structural error, a "basic protection[] whose precise effects are unmeasurable, but without which a criminal trial cannot reliably function."  Id. (quoting Sullivan v. Louisiana, 508 U.S. 275, 281 (1993)).  As a result, a defendant denied a public trial need not show prejudice for procedurally defaulting his claim.  Id. at 66; see also United States v. Negrón-

---

[2] I note that the jury deliberation rooms in the Moakley Courthouse are positioned to the rear of the courtrooms and are therefore only accessible by a key card.

- 16 -

Sostre, 790 F.3d 295, 305-06 (1st Cir. 2015). We did not cabin the structural error analysis to complete closures, instead speaking broadly of the importance of the Sixth Amendment right to a public trial. Owens, 483 F.3d at 65-66 ("[B]ecause denial of a public trial is structural error, it would be impossible for Owens to establish actual prejudice, and as such, it must be presumed."). Later, in Bucci v. United States, this Court did not reach the question of whether "a partial public trial violation . . . constitutes structural error." 662 F.3d 18, 29 (1st Cir. 2011). Now, by effectively finding that the procedure here did not qualify as a closure, the majority has further undercut the Sixth Amendment guarantee to a public trial and chipped away at the constitutional protections articulated in Owens.

To be sure, the majority is correct that Wilder must show that his counsel's performance was objectively unreasonable under Strickland v. Washington, 466 U.S. 668 (1984), to demonstrate cause for his procedural default. Owens, 483 F.3d at 64. Further, I agree that Wilder cannot make that showing here, and I therefore concur in judgment.[3] But, even if this Court were to accept Bucci's

---

[3] I make this determination based on Judge Casper's finding that defense counsel had informed Judge O'Toole that Wilder did not wish to be present in the jury room. After an evidentiary hearing, Judge Casper credited the prosecutor's testimony that Wilder's counsel had done so, explaining that this testimony was not inconsistent with defense counsel's recollection that he

suggestion that a partial closure is not structural error, Wilder has demonstrated that this was a full closure for which there was no "overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest." Id. at 61-62 (quoting Press-Enter. Co. v. Superior Court of Cal., 464 U.S. 501, 510 (1984)). Accordingly, he need not show prejudice. Id. at 66.

---

typically advised defendants that jurors would be more candid during voir dire if the defendant were not present. Such a factual finding is reviewed for clear error, Owens, 483 F.3d at 57, and Judge Casper's determination, made after reviewing affidavits and observing a comprehensive evidentiary hearing, is not clearly erroneous. Nevertheless, I am troubled that there is no indication of Wilder's waiver on the record. See Brookhart v. Janis, 384 U.S. 1, 4 (1966) ("There is a presumption against the waiver of constitutional rights, and for a waiver to be effective it must be clearly established that there was 'an intentional relinquishment or abandonment of a known right or privilege.'" (internal citations omitted)).

Further, I dispute the majority's suggestion that defense counsel's ignorance of the law is irrelevant to the ineffective counsel inquiry for purposes of the Sixth Amendment analysis. See Bullock v. Carver, 297 F.3d 1036, 1049 (10th Cir. 2002) ("An attorney's demonstrated ignorance of law directly relevant to a decision will eliminate Strickland's presumption that the decision was objectively reasonable because it might have been made for strategic purposes . . . ."). That said, defense counsel explained that he thought that jurors would give more candid responses in the defendant's absence and that "it was awkward for jurors to face the defendant at such a small, confined space." This strategic decision is not objectively unreasonable and could have been made by an attorney fully informed of the law. See Horton v. Allen, 370 F.3d 75, 83-84 (1st Cir. 2004) ("Defense counsel's decision to agree to a closed individual voir dire was an objectively reasonable strategy designed to elicit forthcoming responses from the jurors . . . ."); Bullock, 297 F.3d at 1053-54 (finding that a determination made when an attorney was ignorant of the applicable law could have been made by "a fully informed attorney" and, thus, "was not objectively unreasonable").

Judge O'Toole began jury selection by addressing the venire in open court and asking them a series of general yes or no questions. Judge O'Toole stated that he would follow up later with private questions for those who answered affirmatively to his initial inquiries. When all the jurors responded that they were regular users of the internet, Judge O'Toole explained that he would need to speak to everyone in private. Judge O'Toole and the attorneys proceeded to the private jury deliberation room, and defense counsel advised Wilder to wait in the empty courtroom with his family. Throughout the morning and for a portion of the afternoon session, Judge O'Toole questioned forty-eight jurors, one by one, in the private room. Neither Wilder nor any other members of the public observed the private questioning; only Judge O'Toole, the lawyers, and the single prospective juror being questioned were present.

The majority explains, "[t]he only difference between these procedures and a sidebar conference was that members of the public could not observe the individual questioning from their seats in the spectator gallery and attempt to discern facial expressions or body language." Wilder v. United States, slip op. at 14 (1st Cir. November 20, 2015). This explanation understates the importance of such observations: during a sidebar, even though the jurors' responses are not audible to the public, the prospective jurors still respond to the judge's queries in an open

- 19 -

courtroom, and their physical reactions to any questions are visible to observers.  The presumed openness of holding proceedings in the courtroom is absent when questioning instead takes place behind closed doors.  See Press-Enter. Co., 464 U.S. at 507-08 (discussing the historical importance of the "open process" in the legal system, which gives "assurance to those not attending trials that others were able to observe the proceedings and enhanced public confidence"); Owens, 483 F.3d at 65 ("Judges, lawyers, witnesses, and jurors will perform their respective functions more responsibly in an open court than in secret proceedings." (quoting Estes v. Texas, 381 U.S. 532, 588 (1965))).[4]

The Supreme Court recognized that a complete closure may be justified where the following four requirements are satisfied:

> the party seeking to close the hearing must advance an overriding interest that is likely

---

[4] The majority does not reach the merits of Wilder's Fifth Amendment claim in light of his procedural default.  While I agree that his Fifth Amendment claim was procedurally defaulted as well, I note that any similarities between a sidebar and the procedure here are further minimized with respect to Wilder's right to be present during trial.  During a sidebar, the defendant typically is seated in the courtroom, only feet away from where the questioning is taking place.  As a result, defense counsel can consult his client with only minimal disruptions to the questioning.  Conversely, should the defendant wish to ask about a particular juror based on observations of the juror's facial expressions or gestures, he can easily flag his attorney.  When questioning takes place in a separate room, the defendant and defense counsel can no longer engage in these simple communications; the questioning must be paused for several minutes at a time whenever defense counsel seeks to consult his client, and the defendant must ask to be admitted to the private room to ask his defense attorney even a simple question.

> to be prejudiced, the closure must be no
> broader than necessary to protect that
> interest, the trial court must consider
> reasonable alternatives to closing the
> proceeding, and it must make findings adequate
> to support the closure.

Waller v. Georgia, 467 U.S. 39, 48 (1984). In an affidavit submitted for the § 2255 hearing, Judge O'Toole explained that he preferred to conduct questioning of personal matters such as child or sexual abuse in a private room. I do not foreclose that such concerns may justify a full closure, see Press-Enter. Co., 464 U.S. at 511-12 (noting that questioning regarding "deeply personal matters" may justify complete closure), but the record does not demonstrate that Judge O'Toole considered reasonable alternatives, see, e.g., id. at 512 (recommending that trial judges "requir[e] the prospective juror to make an affirmative request . . . [where] disclosure infringes a significant interest in privacy"), as Waller requires. Moreover, Judge O'Toole's post-hoc justifications should not excuse the closure; such findings must be made during jury selection. Presley v. Georgia, 558 U.S. 209, 213 (2010) ("Waller provided standards for courts to apply before excluding the public from any stage of a criminal trial . . . ."); United States v. Gupta, 699 F.3d 682, 687 (2d Cir. 2011) (refusing to consider a later-filed affidavit "because the court made no explicit findings before closing the courtroom" (emphasis in original)); see also Owens, 483 F.3d at 62 ("[A] court must

consider (and reject) alternatives to closure before barring public access.").

The government contends that the closure was only partial, noting that the initial general questions to prospective jurors and subsequent peremptory challenges were open to the public; that the courtroom remained open throughout the jury selection process; and that Wilder and the public could observe the venire as they proceeded from the courtroom to the jury room and, again, upon their return. But this argument misses the point: the public was excluded from the most critical components of the jury selection process. During the private questioning, prospective jurors were asked about their feelings on child pornography and how they would respond to graphic images, among other things. These queries directly concerned the jurors' abilities to set aside their biases and return a fair verdict, inquiries central to the fairness of Wilder's trial. If the Sixth Amendment right to a public trial protects anything, it must protect access to the most substantive components of the trial. Cf. Waller, 467 U.S. at 46 (explaining that the Sixth Amendment right to a public trial extended to a suppression hearing, noting that such "hearings often are as important as the trial itself"); Owens, 483 F.3d at 63 (finding that courtroom closure was not trivial as "[j]ury selection is . . . a crucial part of any criminal

case").  To hold otherwise is to reduce the Constitution's fair trial guarantees to mere formalities.