# United States Court of Appeals
## For the First Circuit

No. 09-2276

UNITED STATES OF AMERICA,

Appellee,

v.

OMAR R. SANTIAGO MIRANDA,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Juan M. Pérez-Giménez, U.S. District Judge]

Before

Torruella, Leval,* and Lipez, Circuit Judges.

Rafael F. Castro Lang for appellant.
Idalia Mestey-Borges, Assistant United States Attorney, with
whom Rosa Emilia Rodríguez-Vélez, United States Attorney, and
Nelson J. Pérez-Sosa, Chief, Appellate Division, were on brief, for
appellee.

August 18, 2011

*Of the Second Circuit, sitting by designation.

**LIPEZ**, **Circuit Judge**.   After pleading guilty to conspiring to possess with intent to distribute significant amounts of cocaine, crack, and marijuana, Omar Santiago Miranda (Santiago) moved to withdraw his plea.   He argued that his plea was involuntary due to his excessive consumption of prescription drugs, lack of sleep, familial coercion, and a history of bipolar disorder.   The district court denied the motion and sentenced Santiago to 380 months in prison.

On appeal, Santiago challenges the district court's denial of his motion, as well as its decision not to hold an evidentiary hearing before disposing of the motion.   The government contends that Santiago's appeal is barred by a provision in the plea agreement waiving his right to appeal.   In the alternative, the government argues that the motion to withdraw was properly denied.   We bypass the appellate waiver issue and affirm the judgment of the district court.

## I.

The following facts are taken from the unchallenged portions of the plea agreement, the change-of-plea colloquy, the presentence investigation report, and the sentencing hearing. See United States v. Isom, 580 F.3d 43, 45 n.2 (1st Cir. 2009).

## A.  Indictment and Pre-Trial Background

On September 29, 2005, a federal grand jury returned a nine-count second superseding indictment against twenty-two

defendants.  Santiago was named in two counts: Count Five charged him with conspiring to possess with intent to distribute five kilograms or more of cocaine, fifty grams or more of crack, and one hundred kilograms or more of marijuana, in violation of 21 U.S.C. § 841(a)(1), and Count Seven charged him with knowingly using, carrying, and possessing a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1) and (2).

**B.  Change-of-Plea Hearing**

The trial was scheduled to begin March 6, 2007.  Santiago appeared on that date but, instead of proceeding to trial, informed the court that he wished to plead guilty.  The court proceeded with a change-of-plea hearing and received Santiago's plea agreement, in which he pled guilty to Count Five only.  The government and Santiago agreed that, because he assumed responsibility as an aider and abettor to a 2004 murder that constituted one of the overt acts in furtherance of the drug conspiracy, his base offense level was 43.  See U.S. Sentencing Guidelines Manual §§ 2D1.1(d)(1), 2A1.1 (2006).  They also agreed that a clear demonstration of acceptance of responsibility for the conspiracy offense would merit a three-level reduction.  Based on the resulting total offense level of 40, the parties agreed that they would recommend a 324-month sentence if Santiago's criminal history category (CHC) was II, and a 360-

month sentence if his CHC was any higher.[1]  In addition to listing a number of rights Santiago relinquished by accepting the plea deal, the plea agreement stated that he "hereby agrees that if this Honorable Court accepts this Plea Agreement and sentences him according to its terms and conditions, defendant waives and surrenders his right to appeal the judgment and sentence in this case."

At the hearing, the court first considered Santiago's competence to plead, discussing with him his age, his educational level, and his mental state.  Because Santiago's appeal focuses on that mental state, we quote from a portion of the hearing transcript at length:

> THE COURT:  How do you feel this afternoon?
> THE DEFENDANT:   I feel fine.
> THE COURT:  Have you taken any drugs, pills, or medicines within the last 24 hours?
> THE DEFENDANT:   No.
> THE COURT:  Do you realize you're in a courtroom?
> THE DEFENDANT:   That is correct.
> THE COURT:  You're here to change your plea of not guilty to one of guilty as to Count Five of the indictment.
> THE DEFENDANT:   That is correct.
> THE COURT:  And do you know what you have been charged with in Count Five?
> THE DEFENDANT:   That is correct.
> THE COURT:  There is no need for me to read to you charges at this time?
> THE DEFENDANT:   No.
> THE COURT:  Have you had enough time to consult with your attorney before this afternoon?

---

[1] The recommended sentences fell at the bottom of the ranges suggested by the Sentencing Guidelines.  Those ranges were, respectively, 324 to 405 months and 360 months to life.

> THE DEFENDANT:  That is correct.
>
> THE COURT:  Are you satisfied with her services up to now?
>
> THE DEFENDANT:  Very satisfied.
>
> THE COURT:  At this time I find the defendant competent to plea.
>
> I'm going to continue asking you questions.  If you do not understand my questions, you may ask me to repeat them to you.  If you have any doubts as to the answers you are to give to my questions, then you may consult with your attorney who is standing next to you.  Do you understand?
>
> THE DEFENDANT:  I understand.
>
> THE COURT:  The reason I'm explaining this to you is because I'm going to place you under oath, and if any of your answers to my questions are untruthful, then you may be subjecting yourself to further charges of perjury or providing false information while under oath which carry additional penalties.  Do you understand?
>
> THE DEFENDANT:  I understand.
>
> . . .
>
> [Santiago was sworn.]

The court proceeded to inform Santiago of the various rights he would surrender by pleading guilty, and Santiago confirmed that he understood and that he still wished to plead guilty.

With respect to coercion, the court asked whether "anybody threatened you in any way to induce you to plead guilty," and Santiago said, "No one."  The court asked again, "Is anybody forcing you in any way to get you to plead guilty?," to which Santiago responded, "No one."  Finally, the court asked whether anyone had "made any promises or offered you any things of value to get you to plead guilty," and Santiago again answered, "No one."

The court then reviewed Santiago's plea agreement in detail, explaining to Santiago that the agreement was not binding on the court, that there was no final stipulation regarding

-5-

Santiago's CHC, and that Santiago's signature meant that he agreed that the facts in it were true and accurate. Santiago indicated his understanding of each of these points. The court also explained the waiver of appeal clause:

> THE COURT: Paragraph 18 refers to the fact that you agree that if this Court accepts the Plea Agreement and sentences you according to its terms and conditions, that you will be in a position to waive and surrender your right to appeal the judgment and sentence in this case. Is that correct?
> THE DEFENDANT: Correct.
> THE COURT: But by the same token, do you understand that if I do not accept the Plea Agreement and I do not sentence you according to the terms and conditions of the Plea Agreement, that then you would not waive and surrender your right to appeal the judgment and sentence in this case. Do you understand?
> THE DEFENDANT: I understand.

After accepting Santiago's plea, the court scheduled a sentencing hearing for June 7, 2007.

## C. Presentence Report and Motion to Withdraw Guilty Plea

Following the change of plea, the probation office prepared its first draft of Santiago's presentence investigation report (PSR). In addition to describing Count Five and the underlying offense conduct, the PSR calculated the guideline sentencing range, listed Santiago's prior criminal convictions, and established that his CHC was III. The probation officer also described Santiago's family and community ties, as well as his physical condition and drug use. The officer reported that he had "not identified any information that would warrant a departure from

the guidelines or a variance in sentencing pursuant to 18 U.S.C. § 3553(a)."

Copies of the initial PSR were delivered to Santiago's attorney on May 3, 2007. On May 11, 2007, she sent a letter objecting to the report's conclusion that no departure or variance was warranted. On May 18, she added an objection that Santiago had not admitted responsibility for his involvement in the charged offense.[2] The probation officer included the objections and his responses in an addendum, and corrected the PSR to reflect that Santiago had not accepted responsibility for the crime. The final PSR was completed May 23 and filed with the court May 31.

On May 22, 2007, Santiago filed a motion to withdraw his guilty plea, arguing that it was involuntary and unknowing due to his drug abuse, his bipolar disorder, and coercion by family members to plead guilty.[3] Accompanying the motion was Santiago's statement under penalty of perjury that, on March 6, his aunt and her husband were present in court and asked him to accept the plea

---

[2] Ordinarily, a defendant who pleads guilty seeks a sentence reduction for having accepted responsibility for his crime. See U.S. Sentencing Guidelines Manual § 3E1.1. Santiago's objection to the PSR's inclusion of such a reduction was thus unusual, and foreshadowed his motion, filed six days later, to withdraw his plea.

[3] In his motion, Santiago also argued that he had entered his plea without knowledge of "the nature of the crime and . . . the consequences [of pleading guilty]." The court rejected these arguments in its order denying the motion. Santiago does not challenge that aspect of the order or revive the arguments here.

offer to avoid the risk of a life sentence. He also reported that he had called his mother that day, who asked that he accept the deal. According to Santiago, he felt "forced[,] coerced and pressured by the wish of my family that I plead guilty." The statement also said that Santiago had been abusing prescription medications at the corrections facility for days leading up to and including March 6, and that he had not slept for several days before March 6. Santiago reported being confused, anxious, and depressed at the change-of-plea hearing, and contended that all of these conditions rendered his plea involuntary and unknowing. Finally, he swore that he was never part of the charged conspiracy. Not surprisingly, the government opposed Santiago's motion.

On December 6, 2007, the government asked the court to order a psychiatric evaluation of Santiago to determine his competency to enter a plea of guilty and/or to stand trial. See 18 U.S.C. §§ 4241. Santiago objected to being moved to a facility in North Carolina for the examination, and requested that he be allowed to have a separate examination performed by his own experts. The district court ordered that Santiago be taken to a facility in Florida or another suitable institution for an evaluation of his competency to stand trial, meaning "whether he is

able to understand the proceedings against him, to consult with his counsel and aid in his defense."[4]

In an opinion and order filed April 15, 2008, the court denied Santiago's motion to withdraw his guilty plea.[5] The court explained that Santiago's description of his mental condition at the change-of-plea hearing was belied both by his behavior at that hearing and by the fact that he signed the plea agreement, which stated that his plea was free and voluntary. The court also noted that Santiago, detained since October 7, 2005, had never before alleged having bipolar disorder. Moreover, in his sworn statement, Santiago said he was incompetent to enter a plea on March 6 but would have been competent to stand trial that day. The court pointed out the logical inconsistency in this assertion: "Selective

_____

[4] The court first issued the order for a competency evaluation on March 18, 2008. It renewed its instructions in an amended order on April 11, 2008.

[5] It is not clear why the district court issued its order before receiving the results of the competency evaluation it had ordered. Santiago considers this to be an abuse of discretion. However, he also argues that the evaluation was of little or no value because it addressed only his mental status at the time of evaluation, not on the day he pled guilty. In any event, the district court did not abuse its discretion by denying the motion without the benefit of the competency evaluation. After the court ordered the examination, Santiago requested that it be stayed, arguing that the court's order did not address the issues raised by the defense. Santiago thought that the order sought an evaluation of his sanity, and he contended that it was not sanity, but "mental disease or defect" that was the basis of his motion to withdraw his plea. In effect, Santiago argued that the results of the evaluation would be irrelevant to his motion to withdraw. That argument alone explains why the district court did not have to wait for the competency reports.

competency is a kite that does not fly in our courtroom." See United States v. Morrisette, 429 F.3d 318, 322 (1st Cir. 2005) ("Competence to enter a guilty plea is determined by the same criteria as those governing competence to stand trial: whether the defendant is able to understand the proceedings and assist his counsel with a reasonable degree of rationality.").

**D.  Sentencing**

On July 31, 2009, Santiago appeared for his sentencing hearing.  He moved again to withdraw his plea, but the court did not entertain the motion, stating that the issue was "already resolved."  In response to an inquiry from the court, Santiago's attorney represented that she had attempted to get her client's psychological records from a Dr. Rafael Padro Castro, but none had been forthcoming.  Because those records were unavailable, Santiago's expert had not been able to complete an independent evaluation.  Before imposing a sentence, the court reviewed the mental evaluation performed by the Bureau of Prisons personnel, which the court had received in October 2008, and the final PSR which, due to Santiago's refusal to accept responsibility, gave a total offense level of 43.  Santiago spoke at length on his own behalf, reiterating his innocence and saying that he had not had enough time to consider the plea agreement before signing it. Although noting that, based on the newly increased total offense level of 43 and a CHC of III, the Sentencing Guidelines recommended

-10-

life in prison, the court imposed a sentence of 380 months. Judgment was entered accordingly on August 17, 2009, and Santiago filed a notice of appeal the following day.

On appeal, Santiago contends that the district court erred in denying his motion to withdraw his guilty plea based solely on his statements at the change-of-plea hearing. According to Santiago, his statement under penalty of perjury laid out sufficient grounds for allowing him to withdraw the plea and, at the least, necessitated an evidentiary hearing. The government counters that Santiago may not pursue this appeal because he waived his right to do so in his plea agreement and, in the alternative, that his assertions about the voluntariness of his plea are unfounded.

We address the merits of Santiago's appeal because his claim of involuntariness, if successful, would invalidate both the plea itself and the waiver of his right to appeal. See United States v. Lara-Joglar, 400 F. App'x 565, 566 (1st Cir. 2010) (per curiam) (unpublished).

## II.

Under Federal Rule of Criminal Procedure 11, "[a] defendant may withdraw a plea of guilty . . . after the court accepts the plea, but before it imposes sentence if . . . the defendant can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B); see also Isom, 580 F.3d

-11-

at 52 (same). A number of factors bear on whether such a reason exists, the most important of which is "whether the plea was voluntary, intelligent, knowing and in compliance with Rule 11." Isom, 580 F.3d at 52. Other relevant factors include "the strength of the reasons offered in support of the motion [to withdraw]; whether there is a serious claim of actual innocence; the timing of the motion; and any prejudice to the government if the withdrawal is allowed." Id.

In considering a motion to withdraw a guilty plea, the district court must hold an evidentiary hearing if the defendant "alleges facts which, if taken as true, would entitle him to relief." United States v. Pulido, 566 F.3d 52, 57 (1st Cir. 2009) (quoting United States v. González, 202 F.3d 20, 29 (1st Cir. 2000), abrogated on other grounds by Padilla v. Kentucky, 130 S. Ct. 1473 (2010)). "[A] defendant is entitled to an evidentiary hearing unless the facts alleged are 'contradicted by the record or are inherently incredible and to the extent that they are merely conclusions rather than statements of fact.'" Id. (quoting United States v. Crooker, 729 F.2d 889, 890 (1st Cir. 1984)); see also United States v. Ramos, 810 F.2d 308, 314 (1st Cir. 1987).

We review both the denial of the motion to withdraw and the refusal to hold a hearing for abuse of discretion. Isom, 580 F.3d at 52; González, 202 F.3d at 29. The facts found to support the former will be set aside only if they are clearly erroneous,

Isom, 580 F.3d at 52, a situation that does not obtain "[w]here there are two permissible views of the evidence," Anderson v. Bessemer City, 470 U.S. 564, 574 (1985). "If the district court's account of the evidence is plausible in light of the record reviewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." United States v. Marrero-Rivera, 124 F.3d 342, 347 (1st Cir. 1997) (quoting Cumpiano v. Banco Santander P.R., 902 F.2d 148, 152 (1st Cir. 1990)). Here, we find no abuse of discretion and no clear error.

## A. Voluntariness

Santiago argues that he should have been allowed to withdraw his plea because it was involuntary due to his Xanax use, lack of sleep, and familial pressure. Pared down to these suggested impairments, Santiago's appeal resembles that of Hector Rivera-Martinez, one of the defendants in United States v. Pellerito, 878 F.2d 1535 (1st Cir. 1989). Like Santiago, Rivera-Martinez sought to withdraw his plea because it was tendered while he was "in an agitated emotional state brought on by telephone conversations with his hospitalized mother (who was also under indictment)" and because, "while in prison awaiting trial he had been taking an extensive regimen of prescription drugs[,] . . . .

[which] were for the most part sedatives and anti-anxiety agents."[6] Id. at 1541-42.

With respect to the first point, we explained that Rivera-Martinez "misperceive[d] the focus of the plea-retraction inquiry: while evidence of this stripe is probative of an accused's motivation for pleading guilty, it does not necessarily show coercion, duress, or involuntariness." Id. at 1541 (emphasis in original). "The relevant question for plea withdrawal is not whether the accused was sensitive to external conditions -- many defendants are -- but instead whether the decision to plead was voluntary, i.e., a product of free will." Id. With respect to Rivera-Martinez's second argument, we stated that "[t]he mere fact that Rivera-Martinez took potentially mood-altering medication is not sufficient to vitiate his plea. There must be some evidence that the medication affected his rationality." Id. at 1542. Finding no support for either rationale, we affirmed the denial of Rivera-Martinez's motion to withdraw his plea.

The circumstances are substantially similar here. The district court found that Santiago's claim of involuntariness due to family coercion, Xanax use, and lack of sleep was contradicted both by his statements at the change-of-plea hearing and the terms of the plea agreement he had signed. Specifically, at the hearing,

---

[6] Rivera-Martinez also argued that his trial counsel's ineffectiveness rendered his plea involuntary and unknowing. We found those allegations to be baseless. 878 F.2d at 1542-43.

the court asked Santiago whether anyone threatened him, coerced him, made any promises to him, or offered him anything of value to persuade him to plead guilty. Santiago thrice answered, "No one." Similarly, the plea agreement included a provision in which Santiago "acknowledge[d] no threats ha[d] been made against [him] and [he was] pleading guilty freely and voluntarily because [he] is guilty." In an abundance of caution, the court asked Santiago about that provision and confirmed with him that the plea was free and voluntary. The court's rejection of Santiago's claims of prescription drug use followed the same analysis, focusing on Santiago's statements at the change-of-plea hearing that he felt "fine," and had not taken any drugs, pills, or medicines in the past twenty-four hours.

Santiago argues that the district court erred in relying solely upon the statements at the change-of-plea hearing and in the plea agreement because he was "abdicating his will" to that of his aunt and her husband, who were present in the courtroom, and because he could not be expected to admit to drug use that violated prison rules. There is some force to Santiago's arguments. "For obvious reasons, . . . the defendant's own assurances in open court [regarding emotional or mental impairment] at the time of the plea may be given less weight if later evidence to the contrary emerges." United States v. Padilla-Galarza, 351 F.3d 594, 598 (1st Cir. 2003). Similarly, we recognize that "in cases in which a

guilty plea has been improperly induced, most defendants would be expected to deny any impropriety during the Rule 11 hearing." United States v. McCarthy, 433 F.2d 591, 593 (1st Cir. 1970).

On the other hand, a court is entitled to give weight to the defendant's statements at his change-of-plea colloquy absent a "good reason for disregarding them." United States v. Torres-Rosario, 447 F.3d 61, 67 (1st Cir. 2006); see also Pulido, 566 F.3d at 58-59. Moreover, a defendant's "declarations in open court carry a strong presumption of verity." Blackledge v. Allison, 431 U.S. 63, 74 (1977); see also United States v. Alegría, 192 F.3d 179, 186 (1st Cir. 1999) ("[C]ourts cannot operate on the assumption that parties feel free to lie with impunity in response to a judge's interrogation."). We "typically disregard[] representations at a plea colloquy 'only when the allegations [of impairment] were highly specific and usually accompanied by some independent corroboration.'" Pulido, 566 F.3d at 59 (alteration added) (emphasis omitted) (quoting United States v. Butt, 731 F.2d 75, 80 n.5 (1st Cir. 1984)). Without independent corroboration, "we not only view his plea colloquy as 'evidential,' but sufficiently 'conclusive' to contradict his claims." Id. at 60.

Santiago's allegations were unspecific and lacked independent corroboration. The sworn statement was not specific in that it did not say what drug Santiago was abusing, or in what amounts, and did not even mention bipolar disorder. In fact,

-16-

Santiago's motion stated only that he had a "history" of drug abuse, and, "If [he] was at the time of the [change of plea] under the use of prescribed narcotics and undergoing an episode of significant depression due to his mental and emotional condition[,] his ability to make a voluntary and knowing determination at the time he plead[ed] guilty was severely impaired" (emphasis added). On their face, the motion and accompanying statement said no more than that Santiago had used some medication that is available by prescription on March 6, 2007, and that there is a possibility that such use impaired his ability to plead guilty voluntarily and knowingly.

There was also no independent corroboration, such as medical records, prison disciplinary records, or affidavits from others who witnessed any manifestations of an altered mental state. See Padilla-Galarza, 351 F.3d at 598-99 (explaining that, without corroborative testimony of former attorney or psychiatrist, defendant did "no more on the issue of capacity than raise limited doubts"). On May 11, 2007, Santiago asked the court for an order compelling his doctor to produce his medical records. The court issued the requested order on May 14, and yet Santiago failed to produce medical or other records documenting his Xanax use or any of the other sources of mental impairment alleged in his sworn statement. Moreover, according to Santiago, his own aunt kept at

-17-

least some of his medical records, yet none were produced.[7] Similarly, he did not submit an affidavit from any family member corroborating that they had even spoken to Santiago at the change-of-plea hearing, much less that they had urged him to accept the plea deal.

Santiago's sworn statement was contradicted by the plea agreement and change-of-plea colloquy, and the district court was entitled to believe the latter, given no independent corroboration of the former. See Pulido, 566 F.3d at 59-60. Without an "adequate tender" explaining what Santiago "expected to prove at any evidentiary hearing, who would be called, what areas would be covered, and why such a hearing might be expected to be productive," a hearing was unwarranted. United States v. Browne, 318 F.3d 261, 265 (1st Cir. 2003); see also Ramos, 810 F.2d at 314 (holding district court was not required to hold evidentiary hearing where defendant made "eleventh-hour claim . . . that[] his emotionally-depressed state affected the voluntariness of his plea," and court could rely on its own contrary impressions of defendant, where "record presents no reason to doubt [defendant]'s

_____

[7] The PSR states that Santiago's aunt was a psychiatrist and kept all his medical records. The probation officer obtained this information not only by interviewing Santiago, but also by visiting the aunt at her home and confirming Santiago's personal, medical, and legal background with her. Santiago's trial counsel did not object to that portion of the PSR. At oral argument, however, Santiago's appellate counsel contended that the aunt was not a psychiatrist and did not have all of his records.

competence to plead").  In short, because Santiago's motion and sworn statement were so lacking in detail and corroboration, the district court was justified in relying on the change-of-plea colloquy and signed plea agreement to deny Santiago's motion, and in doing so without an evidentiary hearing.

## B.  Other Factors

Although the inadequacies of Santiago's motion and sworn statement already discussed are sufficient to dispose of this appeal, we also note that his claim that he was not a member of the charged conspiracy "flies in the face of several admissions to the contrary."  Isom, 580 F.3d at 53.  Not only did Santiago sign the plea agreement, in which he acknowledged that he was guilty of the conspiracy charged in Count Five of the indictment and admitted the truth of the "Stipulation of Facts" section, he also acknowledged several times under oath at the change-of-plea hearing that he was, in fact, guilty.

Furthermore, the timing of Santiago's motion to withdraw his guilty plea is suspect.  See United States v. Torres-Rosa, 209 F.3d 4, 9 (1st Cir. 2000) ("'The timing of a motion to withdraw a guilty plea often serves as a gauge for measuring the legitimacy of a proffered reason.'" (quoting United States v. Gonzalez-Vazquez, 34 F.3d 19, 23 (1st Cir. 1994))).  Santiago represents that he told his attorney to file a motion to withdraw the plea on April 19, 2007. Even crediting that assertion as true, the motion was not

-19-

filed until May 22 -- well after Santiago's attorney received an unfavorable PSR on May 3. Not only had the probation officer identified no factors that would warrant a departure from the sentencing guidelines or a variant sentence, the PSR also concluded that Santiago's CHC was III, not II. At the time he signed the plea agreement, Santiago was not certain whether his CHC was II or III, so he could have hoped for a sentence as low as 324 months. Because the PSR calculated a CHC of III and incorporated Santiago's failure to accept responsibility, his guideline sentence became life in prison. Consequently, the benefit of pleading guilty and the risk of proceeding to trial dissipated substantially.

These circumstances suggest that it was a recalculation of risks and benefits -- not involuntariness -- that produced Santiago's change of heart. See United States v. Doyle, 981 F.2d 591, 595 (1st Cir. 1992) (stating that defendant's motion to withdraw filed nearly seven months after proffered reason became known and only four days after discovery that sentence would be longer than expected "smacks of post-hoc rationalization"). The prospect of a longer sentence than anticipated is not a "fair and just" reason to permit withdrawal of a guilty plea. Torres-Rosa, 209 F.3d at 9.[8]

---

[8] The government concedes that it would not be prejudiced by a withdrawal of Santiago's plea. Santiago receives no benefit from this concession, however. The prejudice-to-the-government query is one undertaken "[i]f the combined weight of the[] [other] factors tilts in the defendant's favor." United States v. Doyle, 981 F.2d

In sum, Santiago's uncorroborated sworn statement was contradicted by the record, and thus the district court did not abuse its discretion in denying the motion to withdraw and doing so without an evidentiary hearing.

Affirmed.

591, 594 (1st Cir. 1992).  As we explain above, the scales tip in the opposite direction.