# United States Court of Appeals
## For the First Circuit

No. 15-1031

UNITED STATES OF AMERICA,

Appellee,

v.

JOSHUA DUNFEE,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Patti B. Saris, U.S. District Judge]

Before

Kayatta, Stahl, and Barron,
Circuit Judges.

Paul J. Garrity for appellant.
Randall E. Kromm, Assistant United States Attorney, with whom
Carmen M. Ortiz, United States Attorney, was on brief, for
appellee.

May 2, 2016

**PER CURIAM.** Joshua Dunfee confessed not once, but twice, to allegations that he engaged in conduct sufficient to support convictions for the coercion and enticement of a minor, and the sexual exploitation of a child. The first of these confessions came at the time of Dunfee's arrest, and the second came during a change-of-plea hearing before the district court, at which Dunfee pled guilty to the charges against him. Later, Dunfee filed two motions seeking to withdraw his guilty plea. The district court denied these motions and sentenced Dunfee to a twenty-year term of imprisonment. Dunfee now appeals from the denial of his motions to withdraw his plea, as well as from his sentence, which he challenges as procedurally and substantively unreasonable. We AFFIRM.

## I. Facts and Background

### A.   The Offense Conduct

In 2010, Dunfee created a fictitious Facebook page for a photography studio by the name of Hunt Photography. Using the equally fictitious pseudonym, "John," Dunfee held himself out as a Hunt employee and, in September 2011, began communicating online with an adult female, A.L., a resident of Massachusetts. A.L. was interested in working as a model. Believing that Hunt Photography was a legitimate enterprise and that John was its legitimate employee, A.L. agreed to take part in an "audition" with John via a webcam, during which she exposed intimate parts of her body.

- 2 -

A.L. had a ten-year-old daughter, R.L. On October 4, 2011, Dunfee again contacted A.L. This time, again acting as John, Dunfee offered A.L. $20,000 for a "mother-daughter bikini modeling contract." To secure the contract, Dunfee explained, A.L. and R.L. would need to audition.

During the course of a Skype call that afternoon, at Dunfee's direction, A.L. posed R.L. in front of the webcam wearing a bra and panties. Again at Dunfee's direction, A.L. manipulated R.L.'s underwear, then agreed to shave R.L.'s pubic area. A.L. then returned R.L. to the webcam fully nude and, following Dunfee's instructions, displayed R.L.'s genitalia, ostensibly so that Dunfee could determine if R.L. was a suitable "model." R.L. became so upset that she refused to continue and A.L. terminated the Skype call. A.L. then discussed the incident with her sister, who promptly reported it to police.

Using his IP address, law enforcement officers tracked Dunfee's communications to his residence, located in Oxford Junction, Iowa. On November 3, 2011, officers with the United States Postal Inspection Service ("USPIS") executed a search warrant at the premises. After waiving his Miranda rights, Dunfee gave a full confession to USPIS Inspector Scott Kelley, describing in detail his creation of the Hunt Photography Facebook page and his role posing as John, and confirming that he had directed A.L. to shave and display R.L.'s genitalia. Dunfee admitted to

Inspector Kelley that although he was unsure of R.L.'s exact age, he "guessed she was around 15." Dunfee was placed under arrest and was transferred to the District of Massachusetts.

As part of their search of Dunfee's residence, officers seized a number of computers, later examination of which revealed a wealth of incriminating evidence. For example, officers discovered records of the communications between Dunfee and A.L., as well as hundreds of sexually provocative pictures and videos of young girls.[1]

B.   Pretrial Proceedings and Dunfee's Guilty Plea

On November 29, 2011, Dunfee appeared for a hearing before a magistrate judge. Concluding that he posed a danger if released, the magistrate ordered Dunfee detained prior to trial. Dunfee was subsequently indicted on charges of sexually exploiting a child, in violation of 18 U.S.C. § 2251(a) and (e), and coercing and enticing a minor, in violation of 18 U.S.C. § 2422(b).

In March 2012, at Dunfee's request, the magistrate judge dismissed Dunfee's appointed federal defender, and appointed Attorney John Salsberg, an experienced member of the criminal

---

[1] Investigators also uncovered evidence that Dunfee had perpetrated a similar scheme by convincing a California teenager, whom Dunfee knew to be sixteen years old, to send him semi-nude photographs with the promise of a modeling contract.

- 4 -

defense bar, to represent him.[2]  Later, following the district court's approval of further funds, Attorney Salsberg was joined by an associate, resulting in Dunfee having two lawyers representing him for a significant portion of the pretrial proceedings.

In May 2012, Dunfee moved for reconsideration of the magistrate judge's pretrial detention order.  The magistrate judge held a two-day hearing, at which Dunfee offered the testimony of his wife, Barbara Dunfee; his mother-in-law, Terry Sherman; and his sister-in-law, Ashley Hubbard.  Through this testimony, Dunfee sought to establish an alibi to prove that he was not at home on October 4, 2011, when he was alleged to have contacted A.L. and R.L.  For example, Barbara and Ashley testified that they were with Dunfee for portions of the day, and Terry testified that she recalled seeing Dunfee and Ashley driving together that afternoon.

This alibi defense was subsequently undermined in a number of key respects.  For example, on cross-examination, Ashley (Dunfee's sister-in-law) admitted that she had previously had a sexual relationship with Dunfee and that she was aware Dunfee had used the Hunt Photography Facebook account.  During her cross-examination, Terry (Dunfee's mother-in-law) conceded that she was unsure whether she had seen Ashley and Dunfee together on

---

[2] In addition to his several decades of experience, Attorney Salsberg serves as an instructor at Harvard Law School and chairs the Criminal Justice Act Board in Massachusetts.

October 4, or some other date. What is more, while Ashley claimed that she and Dunfee had gone together to two restaurants on October 4, 2011, credit card records later established that they had in fact visited those locations on the previous day, October 3.

The magistrate judge expressed his skepticism of the alibi defense at the hearing, observing that the testimony "simply doesn't persuade me, period." Later, the magistrate judge issued a written order denying Dunfee's motion to reconsider, in which he described the alibi defense as "incredible and unpersuasive."

On September 19, 2013, Dunfee filed a motion to suppress the confession he had offered to USPIS Inspector Kelley, claiming that Kelley had misled and coerced him into waiving his Miranda rights. During a series of ensuing hearings, the district court heard testimony from Dunfee, Inspector Kelley, and another USPIS inspector who had witnessed Dunfee's receipt and acknowledgement of a Miranda waiver. In a written decision, the district court denied Dunfee's motion to suppress, finding that Inspector Kelley "did not coerce, intimidate, or otherwise deceive" Dunfee, and that Dunfee's "credibility was undermined by his clearly false testimony." United States v. Dunfee, No. 12-CR-10024-PBS, 2013 WL 6488710, at *4 (D. Mass. Dec. 9, 2013).

Pretrial proceedings continued through the end of 2013 and into 2014. The trial was repeatedly delayed as Dunfee hired a series of forensics experts (with court-approved funds) to assess

his computer and the records of his online activities. Finally, a trial date was set for March 31, 2014. On the morning trial was to begin, however, Dunfee informed the district court that he intended to plead guilty to both of the charges against him. During a lengthy colloquy that followed, Dunfee assured the district court that he was fit to enter a guilty plea, that he had carefully reviewed the indictment with his attorneys, and that he was satisfied with the quality of the representation he had received. The government then offered a summary of the allegations it would have proven at trial, focusing specifically on Dunfee's use, on October 4, 2011, of the Hunt Photography Facebook page to induce A.L. and R.L. This led to the following exchange:

> The Court: Do you disagree with [the government's description of the offense conduct]?
>
> Dunfee: No.
>
> The Court: All right, were you the person who was pretending to be Hunt Photography and enticing that girl?
>
> Dunfee: Yes.
>
> The Court: [] Did you know she was underage?
>
> Dunfee: Yes.

After further questioning, during which Dunfee repeatedly assured the district court that his decision to plead guilty was undertaken knowingly, freely, and voluntarily, the district court accepted Dunfee's plea.

C.    Dunfee's Attempts to Withdraw His Plea; Sentencing

Some two months later, in May 2014, the Probation Office issued a presentence report ("PSR"), which calculated a guideline recommended sentence of life imprisonment. Soon thereafter, Dunfee filed a pro se motion seeking to remove his attorney and to withdraw his guilty plea, which Dunfee stated was the product of ineffective assistance of counsel. In an accompanying affidavit, Dunfee professed his innocence and claimed that he was forced to plead guilty because his attorney had not adequately prepared for trial and had "obstructed" his defense by, among other perceived shortcomings, failing to pursue exculpatory evidence, discouraging defense witnesses from testifying, and telling Dunfee that his conviction was "guarantee[d]" if the case went to trial.[3]  Under separate cover, Dunfee filed a series of exhibits, including correspondence with his attorney and internet service records, which Dunfee argued proved he was innocent of the charges. Despite Dunfee's voluminous filings, he did not request a hearing. On August 18, 2014, the district court denied Dunfee's motion to withdraw his plea in a thorough written decision.[4]

_____

[3] Although Dunfee was represented by two attorneys, his motion and affidavit focus only on the actions of Attorney Salsberg.

[4] The district court later granted Dunfee's request that Attorney Salsberg and his associate be dismissed from the case. The court appointed new counsel to represent Dunfee at sentencing.

In October 2014, still dissatisfied, Dunfee filed yet another pro se motion seeking to withdraw his plea. As before, Dunfee appended a lengthy series of exhibits, which he argued supported his claim of innocence. Again, he did not expressly request a hearing. The district court promptly denied this motion.

Although Dunfee's PSR calculated a recommended sentence of life imprisonment, both Dunfee and the government urged the district court to impose a below-guideline sentence. The government requested a sentence of twenty-three years; Dunfee requested fifteen years. In December 2014, the district court sentenced Dunfee to a twenty-year prison term.

## II. Discussion

Dunfee appeals from the denial of his motions to withdraw his guilty plea, as well as from his sentence, which he challenges as procedurally and substantively unreasonable. We consider these issues in turn.

A. Withdrawal of the Guilty Plea

"A defendant may withdraw a guilty plea before sentence is imposed if he shows 'a fair and just reason for requesting the withdrawal.'" United States v. Isom, 580 F.3d 43, 52 (1st Cir. 2009) (quoting Fed. R. Crim. P. 11(d)(2)(B)). We review a district court's denial of a motion to withdraw for abuse of discretion, United States v. Sousa, 468 F.3d 42, 46 (1st Cir. 2006), setting

aside factual findings only if they are clearly erroneous, United States v. Santiago Miranda, 654 F.3d 130, 137 (1st Cir. 2011).

A defendant does not have an "unfettered right to retract a guilty plea" and he bears the burden to establish a fair and just reason for withdrawal. United States v. Merritt, 755 F.3d 6, 9 (1st Cir. 2014). In considering whether the defendant has carried this burden, we consider "whether the plea was voluntary, intelligent, knowing and in compliance with Rule 11; the strength of the reasons offered in support of the motion [to withdraw]; whether there is a serious claim of actual innocence; the timing of the motion; and any prejudice to the government if the withdrawal is allowed." Isom, 580 F.3d at 52.

### i.  Rule 11: Voluntary, Intelligent, and Knowing

The question of whether the defendant's guilty plea was entered voluntarily, intelligently, and knowingly is regarded as the "most significant" of the relevant factors. See United States v. Cotal-Crespo, 47 F.3d 1, 3 (1st Cir. 1995). Here, we have little difficulty concluding that Dunfee's plea passes muster. Upon being advised of his intention to plead guilty, the district court placed Dunfee under oath and advised him of his rights to a jury trial, to be represented by counsel, and to confront the witnesses against him. See Fed. R. Crim. P. 11(b)(1)(C)-(F). The district court also reviewed with Dunfee the charges he faced, the minimum and maximum penalties associated with those charges, the

applicable sentencing guideline range, and the fact that there was no plea agreement in place.  See id. 11(b)(1)(G)-(N).

What is more, the district court went to great lengths to ensure that Dunfee was pleading guilty of his own volition, and that there was a sufficient factual basis for him to do so.  See id. 11(b)(2) and (3).  In response to clear and direct questions posed by the district court, Dunfee confirmed that he had reviewed the indictment with his attorneys, that he understood its contents, and that he was satisfied with his legal representation.  Then, at the court's request, the government described the factual allegations it would have been able to prove at trial.  After hearing these allegations, Dunfee confirmed that they were true and correct.  He also answered "yes" when the district court asked him whether he had used the Hunt Photography Facebook account to entice A.L. and R.L., and whether he knew at the time that R.L. was underage.

In sum, Dunfee affirmatively declared under oath at a properly conducted Rule 11 hearing that he was guilty of the crimes with which he was charged.  These "declarations in open court carry a strong presumption of verity," Santiago Miranda, 654 F.3d at 138 (quoting Blackledge v. Allison, 431 U.S. 63, 74 (1977)), and the district court was "entitled to give weight to [those declarations] absent a 'good reason for disregarding them,'" id. (quoting United States v. Torres-Rosario, 447 F.3d 61, 67 (1st Cir. 2006)); see

- 11 -

also United States v. Gates, 709 F.3d 58, 69 (1st Cir. 2013) ("A defendant is normally bound by the representations that he himself makes in open court at the time of his plea.").

Dunfee argues here, as he did before the district court, that his decision to enter a guilty plea was not made voluntarily; rather, it was the product of his attorney's ineffective assistance and coercion. More specifically, Dunfee maintains that because his attorney failed to adequately prepare for trial, he felt that he had no choice but to plead guilty. Compounding matters, Dunfee felt coerced by his attorney, who told him that his conviction was "guarantee[d]" if the case went to trial.

To parse Dunfee's ineffective assistance claim, we apply the two-part standard articulated in Strickland v. Washington, 466 U.S. 668 (1984). See United States v. Isom, 85 F.3d 831, 837 (1st Cir. 1996). In order to prevail, Dunfee must "show that, first, counsel's performance in advising [his] guilty plea[] fell below the standard of performance of reasonable proficient counsel, and second, that by such inadequate performance, [Dunfee] was induced to enter [a] guilty plea[] which he otherwise would not have entered." Id. (internal quotation marks omitted). "The Strickland test imposes 'highly deferential' judicial scrutiny of counsel's performance and 'a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" Lopez-Nieves v. United States, 917 F.2d 645, 648 (1st Cir. 1990)

(quoting Strickland, 466 U.S. at 689). Where, as here, the defendant was represented by multiple attorneys, an ineffective assistance challenge is particularly difficult to mount. See id. at 647.

Dunfee offers several examples of what he characterizes as Attorney Salsberg's ineffectiveness. He claims that Attorney Salsberg failed to investigate and uncover exculpatory evidence, and discouraged certain defense witnesses from testifying. He also argues that Attorney Salsberg failed to investigate his mental health as relevant to the defense, and failed to advise the district court, on the eve of trial, that a continuance was needed in light of a new prospective witness that Dunfee had identified.

We begin with Dunfee's claim that Attorney Salsberg failed to pursue exculpatory evidence. Although it is somewhat unclear, as best we can tell, this claim relates principally to evidence which falls into one of two broad categories. First, Dunfee claims that Attorney Salsberg failed to adequately pursue evidence and witnesses which would have supported his alibi defense. Second, Dunfee argues that Attorney Salsberg was derelict in failing to uncover electronic records which he maintains would have proven that he could not have communicated with A.L. and R.L. on October 4, 2011.

Dunfee's attorneys aggressively pursued evidence to support the alibi defense, but the evidence simply did not exist.

- 13 -

By way of example, while Dunfee sought to offer the testimony of Terry and Ashley to prove that he was not at home at the time of the alleged offense, neither witness was apparently in a position to establish his whereabouts on the day in question. Likewise, while Dunfee pointed to his time-stamped work records as evidence that he could not have committed the crime, they in fact showed that he was not at work during the day on October 4, 2011.

Furthermore, to the extent that Dunfee now claims that electronic records might have helped his cause had his attorneys uncovered them, the district court acted well within its discretion in finding that any such records either did not exist or would not have been helpful to Dunfee. As we have said, the pretrial proceedings were repeatedly delayed as Dunfee sought more time (and court-approved funding) for further forensic review of the computers seized during the search of his residence. Despite ample opportunity for the discovery of the electronic records that Dunfee claims his attorneys should have found, no such evidence was presented to the district court, nor has it been presented to us on appeal. See United States v. Pulido, 566 F.3d 52, 59-60 (1st Cir. 2009) ("[W]e have typically disregarded representations at a plea colloquy 'only when the allegations were highly specific and usually accompanied by some independent corroboration.'" (quoting United States v. Butt, 731 F.2d 75, 80 n.5 (1st Cir. 1984))).

Ultimately, the district court's conclusion that Dunfee's attorneys did not fail to seek out exculpatory evidence was rooted in the district court's reasonable evaluation of the extensive factual record before it. Where, as here, such factual determinations underpin the denial of a motion to withdraw, we review those determinations solely for clear error. Santiago Miranda, 654 F.3d at 137. Dunfee would have us construe the same factual record that was before the district court favorably to him, and to infer the existence of evidence that he claims his attorneys should have found. But, such inferential leaps and second guessing are not the object of our clear error inquiry. See Cumpiano v. Banco Santander P.R., 902 F.2d 148, 152 (1st Cir. 1990) ("If the district court's account of the evidence is plausible in light of the record reviewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." (quoting Anderson v. City of Bessemer City, 470 U.S. 564, 573-74 (1985))). Recognizing that the district court was itself constrained to apply "highly deferential" scrutiny to counsel's performance, Strickland, 466 U.S. at 689, we find that the district court did not clearly err when it found that Dunfee's attorneys acted reasonably in seeking exculpatory evidence.

We may quickly dispose of the remaining bases for Dunfee's ineffective assistance claim. Dunfee claims that

Attorney Salsberg discouraged certain defense witnesses from testifying, although he does not identify these witnesses in his brief. Even assuming, however, that Attorney Salsberg actively discouraged these unnamed witnesses from testifying, this does not raise the specter of ineffective assistance because Dunfee does not suggest that these witnesses could have provided exculpatory (or even relevant) testimony had the case proceeded to trial.[5]

Next, Dunfee claims that Attorney Salsberg failed to inform the district court, in a motion to continue filed just prior to trial, that a continuance was necessary because Dunfee had identified a new prospective witness. Rather, this motion identified the reason for the requested continuance as a need to further examine electronic records related to Dunfee's use of Facebook. The district court promptly denied this motion.

To be sure, an attorney filing a motion of any kind is obligated to "state the grounds on which it is based." Fed. R. Crim. P. 47(b). Here, Attorney Salsberg complied with this requirement by describing in detail his need for additional time to examine Dunfee's use of Facebook. Although, with the benefit of hindsight, Dunfee argues that Attorney Salsberg should have proffered a different (or additional) reason for a continuance,

---

[5] For example, although there is some indication that Attorney Salsberg told Dunfee's mother that her testimony would not be helpful, she does not seem to have been in a position to offer testimony relevant to proving Dunfee's guilt or innocence.

the decision to request a continuance on grounds that more time was needed to review the electronic records at issue in the case is precisely the sort of technical, strategic decision-making that we are loath to second guess. See Wilder v. United States, 806 F.3d 653, 660 (1st Cir. 2015) (assessing whether counsel was ineffective by asking whether "[o]bjectively reasonable counsel could have made a strategic choice" to do as trial counsel did), cert. petition filed, No. 15-8799 (U.S. filed Apr. 4, 2016). This is particularly true where, as here, the defendant is represented by multiple attorneys, at least one of whom is vastly experienced. See Lopez-Nieves, 917 F.2d at 647.

Finally, Dunfee claims that his attorney failed to investigate his depression and anxiety as relevant to proving his innocence. While the record suggests that Dunfee has a history of mental illness, Dunfee does not explain how this fact was relevant to his ability to commit the charged offenses or to his decision to plead guilty. Thus, the alleged failure to pursue this line of defense cannot form the basis of an ineffective assistance claim. Cf. Companonio v. O'Brien, 672 F.3d 101, 110-11 (1st Cir. 2012) (discussing ineffective assistance in the context of counsel's decision of whether to pursue an insanity defense).

Separately, Dunfee argues that his guilty plea was coerced because Attorney Salsberg told him that his conviction was "guarantee[d]" if the case went to trial. "[A] guilty plea is

involuntary and therefore invalid if it is obtained 'by . . . coercion overbearing the will of the defendant.'" United States v. Martinez-Molina, 64 F.3d 719, 732 (1st Cir. 1995) (quoting Brady v. United States, 397 U.S. 742, 750 (1970)). Of course, there is a distinction between coercion and the offering of candid legal advice. See Lema v. United States, 987 F.2d 48, 52-53 (1st Cir. 1993). For this reason, we must be mindful of the context in which an allegedly coercive statement is made.

Here, the record establishes that Dunfee was up against the ropes; he faced a flurry of incriminating evidence and had little with which to fight back. By way of example, Dunfee had offered a full confession at the time of his arrest, the specifics of which were verified through forensic examination of his computers. Not one, but two federal judges had previously rejected his alibi defense as utterly incredible, and the witnesses Dunfee sought to use in that defense were ultimately unable to offer helpful testimony. Thus, while a prognostication that a conviction was "guarantee[d]" may have come as unwelcome, in this case it certainly did not come close to rising to the level of coercion.[6]

---

[6] Dunfee suggests that Attorney Salsberg told deliberate lies to him and to potential defense witnesses in an effort to prevent the case from going to trial. The magistrate judge and the district court independently concluded that Dunfee was untruthful during the pretrial proceedings. Thus, we see no clear error - or, indeed, any error at all - in the district court's rejection of these patently incredible allegations in the absence of any sort of evidentiary proffer.

We thus find that Dunfee's confession was voluntary, intelligent, knowing, and offered and accepted in compliance with Rule 11.  See Isom, 580 F.3d at 52.

### ii.  The Remaining Fair and Just Reason Factors

Although Dunfee focuses on voluntariness, we also consider the strength of the reasons offered in support of withdrawal, whether there is a serious claim of actual innocence, the timing of the motion, and any resulting prejudice.  Id.

First, for reasons we have described, Dunfee's claims of ineffective assistance and coercion do not serve as strong bases in support of withdrawal.  What is more, his claim of innocence is backed only by conclusory allegations and wishful conjecture as to the possible existence of exculpatory evidence.  These unsubstantiated and self-serving claims "evince[] only weak and implausible assertions of innocence."  United States v. Sanchez-Barreto, 93 F.3d 17, 24 (1st Cir. 1996); see also United States v. Pellerito, 878 F.2d 1535, 1543 (1st Cir. 1989) ("When an accused seeks to withdraw a guilty plea, the court is not obliged to treat self-serving accounts as gospel.").

With respect to timing, Dunfee waited some two months after pleading guilty to file his first motion to withdraw.  This extended delay weighs against permitting withdrawal.  See United States v. Pagan-Ortega, 372 F.3d 22, 31 (1st Cir. 2004) (holding that a two-month delay between the entry of a guilty plea and a

- 19 -

motion to withdraw was "well within the area of vulnerability because of untimeliness"). What is more, we look skeptically on motions to withdraw which follow closely on the heels of the issuance of an unfavorable PSR, as was the case here. See Santiago Miranda, 654 F.3d at 140 ("Because the PSR calculated a . . . guideline sentence [of] life in prison. . . . [t]hese circumstances suggest that it was a recalculation of risks and benefits—not involuntariness—that produced [a] change of heart.").

Finally, we find that both the government and Dunfee's victims would have been prejudiced by a withdrawal of his plea, further tipping the scales in favor of affirmance. See United States v. Santiago-Rivera, 805 F.3d 396, 398 (1st Cir. 2015) (recognizing, in a child pornography case, "the severe prejudice that the government would face were [the defendant] permitted to withdraw his guilty plea, and the burden that his victims would face were they forced to relive the trauma inflicted upon them so long after they believed this case had ended").

In the final analysis, Dunfee's motions failed to establish a fair and just reason for the withdrawal of his guilty plea and, thus, we affirm their denial by the district court.

### iii. Denial Without a Hearing

Separately, Dunfee challenges the district court's decision not to hold a hearing on one (or both) of his motions to withdraw. "[A]n evidentiary hearing on a motion to withdraw . . .

is required when a defendant alleges facts which, if taken as true, would entitle him to relief." Pulido, 566 F.3d at 57 (internal quotation marks omitted). "Specifically, a defendant is entitled to an evidentiary hearing unless the facts alleged are 'contradicted by the record or are inherently incredible . . . [or] are merely conclusions rather than statements of fact.'" Id. (quoting United States v. Crooker, 729 F.2d 889, 890 (1st Cir. 1984) (further quotation marks omitted)).

Because Dunfee did not request a hearing on either of his motions to withdraw his plea, our review is for plain error. See United States v. Cheal, 389 F.3d 35, 45 (1st Cir. 2004). To prevail, Dunfee must establish "(1) that an error occurred (2) which was clear or obvious and which not only (3) affected [his] substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of judicial proceedings."[7] United States v. Duarte, 246 F.3d 56, 60 (1st Cir. 2001).

Here, Dunfee's claims of ineffective assistance, coercion, and innocence were conclusory and unsubstantiated. They were also wholly refuted by the record evidence. Thus, even had Dunfee clearly requested a hearing in connection with either of

---

[7] Dunfee claims that his second motion to withdraw "indirectly" requested a hearing and, therefore, we should review for abuse of discretion. See Santiago Miranda, 654 F.3d at 137. We need not decide whether Dunfee adequately requested a hearing, however, because we find that his challenge would fail under either plain error or abuse of discretion review.

his motions to withdraw, the district court would have been under no obligation to grant him one.  Consequently, the lack of a hearing on either motion does not serve as grounds for reversal.

B.    Reasonableness of the Sentence

Dunfee challenges his sentence as both procedurally and substantively unreasonable.  Because this challenge was not preserved, our review is for plain error.  United States v. Ruiz-Huertas, 792 F.3d 223, 226 (1st Cir. 2015).[8]

i.    Procedural Reasonableness

A sentence is procedurally reasonable if "the district court committed no significant procedural error, such as . . . failing to consider the [18 U.S.C.] § 3553(a) factors, . . . or failing to adequately explain the chosen sentence."  United States v. Martin, 520 F.3d 87, 92 (1st Cir. 2008) (quoting Gall v. United States, 552 U.S. 38, 51 (2007)).  Dunfee contends that his sentence was procedurally unreasonable because the district court did not consider his mental illness and failed to fully explain the sentence in light of the § 3553(a) factors.  See 18 U.S.C. § 3553(c) (requiring the court to "state . . . the reasons for its imposition of the particular sentence").  We are not persuaded.

---

[8] We acknowledge that the standard applicable to unpreserved claims of substantive reasonableness is "somewhat blurred," Ruiz-Huertas, 792 F.3d at 228, but we need not delve any deeper because Dunfee concedes that plain error review applies to his claim.

First, the record reveals that the district court was acutely aware of Dunfee's mental health issues. Before imposing the sentence, the district court observed that Dunfee has "some anxiety disorder." Then, the court listened as defense counsel explained his belief that Dunfee suffers from a dissociative disorder "where he has accepted responsibility publicly . . . but he can't now accept it." Later, the district court stated that "[Dunfee] needs mental health evaluation and treatment. . . . [T]here's something that doesn't allow him to see what's happened."

It is true, as Dunfee contends, that the district court did not expressly state that mental health was among the § 3553(a) factors that it considered in imposing sentence. But, such excessive precision was not required, particularly where the court was clearly mindful of the role that Dunfee's mental health had played in the offense and his inability to accept responsibility for it. See United States v. Turbides-Leonardo, 468 F.3d 34, 40 (1st Cir. 2006) ("[T]he sentencing court's explanation need [not] be precise to the point of pedantry."); United States v. Clogston, 662 F.3d 588, 592 (1st Cir. 2011) ("A reviewing court should be reluctant to read too much into a district court's failure to respond explicitly to particular sentencing arguments. Instead, the reviewing court must assay the record as a whole to gauge the sentencing judge's thought process.").

What is more, we reject Dunfee's claim that the district court failed to adequately explain his sentence in light of the § 3553(a) factors. The district court expressly considered, among other factors, the seriousness of the offense and Dunfee's lack of remorse. The court also considered mitigating factors, including Dunfee's work history and the fact that he had not physically touched his victims. See 18 U.S.C. § 3553(a) (listing, among other relevant factors, "the nature and circumstances of the offense and the history and characteristics of the defendant" and "the need for the sentence imposed"). Thus, we find that the district court adequately explained Dunfee's sentence, and in any event certainly committed no plain error. See United States v. Dixon, 449 F.3d 194, 205 (1st Cir. 2006) ("[A] sentencing court . . . is not required to address [all of the § 3553(a)] factors, one by one, in some sort of rote incantation when explicating its sentencing decision.").

### ii. Substantive Reasonableness

"A sentence is substantively reasonable so long as it rests on a 'plausible sentencing rationale' and embodies a 'defensible result.'" Ruiz-Huertas, 792 F.3d at 228 (quoting Martin, 520 F.3d at 96). Proving substantive unreasonableness is a "heavy lift" for a defendant, particularly where, as here, the sentence imposed is significantly below the guideline range. Id. at 228-29.

Dunfee makes two arguments claiming that his sentence was substantively unreasonable. First, he claims (again) that the district court failed to consider his history of mental illness. But, as we have described, Dunfee's critique mischaracterizes the sentencing hearing, at which the district court expressly considered his anxiety and his need for mental health treatment.

Dunfee next argues that the court overemphasized his failure to accept responsibility. This was plain error, Dunfee maintains, because he did not receive credit for acceptance of responsibility under the sentencing guidelines and, therefore, a focus on this issue had the effect of penalizing him twice.

True, during sentencing, the district court referenced Dunfee's refusal to accept responsibility and his repeated dishonesty during the pretrial proceedings. But, in our view, these observations were reasonable when considered in context. Dunfee had confessed at the time of his arrest, then again on the record during a change-of-plea hearing. Notwithstanding these confessions and the overwhelming evidence against him, Dunfee sought twice to withdraw his plea, inundating the district court with a series of voluminous, but ultimately baseless filings. What is more, both the district court and the magistrate judge felt the need to take the unusual step of publicly chastising Dunfee for offering false testimony. The district court thus acted within its discretion in referencing these issues during sentencing. See

Clogston, 662 F.3d at 593 ("[T]he weighting of [sentencing] factors is largely within the court's informed discretion.").

Nor are we persuaded that Dunfee was doubly penalized. Although the PSR recommended a life sentence, the district court ultimately imposed a much shorter sentence of twenty years. And Dunfee does not plausibly suggest that a sentence even shorter than that would have resulted had the district court not considered his refusal to accept responsibility.[9] Thus, even if we assume, favorably to Dunfee, that the district court erred by focusing too intently on this issue, Dunfee could not establish that any such error affected his substantial rights. Duarte, 246 F.3d at 60.

### III. Conclusion

The judgment of the district court is AFFIRMED.

---

[9] Indeed, Dunfee already faced a fifteen-year mandatory minimum sentence. See 18 U.S.C. § 2251(e).